WYATT STANLEY

*v.*

R. NEWTON MARSHALL.

*Opinion filed December 16, 1903.*

1. DEEDS—*what necessary to authorize reformation of deed.* To authorize a court of equity to reform a deed on account of a mistake, the mistake must be that of both parties and must be proved by clear and satisfactory evidence.

2. ESTOPPEL—*estoppel in pais must be clearly established.* The facts out of which an estoppel *in pais* is alleged to arise must be established by a preponderance of the evidence.

APPEAL from the Circuit Court of Henderson county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

This appeal is from a decree of the circuit court of Henderson county ordering appellant, Wyatt Stanley, and his wife, Helen T. Stanley, to convey to appellee, R. Newton Marshall, all that part of the north-west fractional quarter of section 5, in township 8, north, range 4, west, that lies directly south of the south-east quarter of section 32, in township 9, north, range 4, west, and all of the north-east fractional quarter of section 5, township 8, north, range 4, west, all in Henderson county, and in case of failure of said Stanley and wife to so con-

vey said premises within thirty days from said decree, that the master in chancery, for and on their behalf, convey said premises to appellee. The decree orders appellee to pay to appellant, within ten days, the sum of $77.93, and provides that appellee pay one-third of the costs of this proceeding and appellant two-thirds thereof.

The original bill in this cause was filed on January 27, 1903, by appellee against Stanley and his wife, to reform a deed made by them to appellee for certain real estate and to correct errors in the description of such real estate. The bill charged that appellant sold to appellee, and intended to convey to him, with other lands, all the north-east fractional quarter of section 5 and that part of the north-west fractional quarter of said section 5 which lies directly south of the south-east quarter of section 32, in town 9, north, range 4, west of the fourth principal meridian, in Henderson county, Illinois,—said section 5 being in town 8 and in the same range and county as said section 32,—but that the deed failed to convey these two tracts, and asked that it be reformed and corrected so as to convey them. The bill was afterwards amended, and J. Cecil Brook and John A. Brook were made parties defendant. Appellant answered the amended bill, denying the material allegations thereof so far as that part of the north-east fractional quarter of section 5 which lies east of the public highway, containing 1.037 acres, is concerned, and admitting that in other respects the deed should be reformed and corrected as prayed. That part of said north-east quarter which lies east of the public highway is improved by a dwelling house, and is the real estate in dispute in this suit. Appellant does not question the propriety of the decree so far as it directs a conveyance of real estate other than the part of said last mentioned quarter section which lies east of the public highway. To the answer appellee filed a general replication. Defendants John A. Brook and J. Cecil Brook also answered said amended bill, dis-

claiming any interest in the land in dispute, and averring that any interest they or either of them may have formerly had in said premises had been transferred and equitably assigned by them to appellee. The cause was on March 4, 1902, referred to the master in chancery, and in accordance with the decree of reference he took the evidence and reported same to the court without findings.

The record shows that prior to March 1, 1901, appellant was the owner of the following tracts of land in Henderson county, Illinois: The north-west quarter of the south-west quarter of section 33, the south half of the south-west quarter of said section 33, and the south-east quarter of section 32, all in township 9, north, range 4, west of the fourth principal meridian; also all of section 4; the east 60 acres of the south-east quarter of section 5, the north-east fractional quarter of section 5, and that part of the north-west fractional quarter of section 5 which lies directly south of the south-east quarter of said section 32, all in township 8, north, range 4, west, as shown by the plat hereinafter set out. The record further shows that appellant went to see J. Cecil Brook in regard to selling his farm or land, and told him that he wanted to sell out. He priced the land to him at $75 per acre, but Brook, after looking the land over with appellee, told him he could not use all the land and that the price was too high. After this a land agent from Kansas City, by the name of Waldock, with whom Stanley was dealing in Kansas real estate, carried on the negotiations for Stanley with J. Cecil Brook, the latter conducting the purchase of the land for himself, John A. Brook and R. Newton Marshall. The evidence of the purchasers shows that Stanley stated to the three purchasers that he wanted to sell his land or his farm, and Stanley says the same thing in substance, although he insists that he gave them the descriptions of the land he desired to sell and did not include a description of the tract in dispute. An agreement was reached by Waldock

with J. Cecil Brook, John A. Brook and Marshall to pur-
chase the land at $70 per acre, and a division thereof
was agreed on among the purchasers, Stanley, however,
not being a party to the agreement of partition nor con-
sulted about the division, he having consented to deed it
in any manner satisfactory to the purchasers.   Separate
deeds were executed and delivered on March 1, 1901, by
Stanley to the purchasers, a banker named Kaiser, of
Stronghurst, Illinois, having prepared the deeds.   The
deed to Marshall described the land he was to have un-
der the division agreed upon among the purchasers, as
follows: The south-east quarter of section 32, township 9,
north, range 4, west; also the east 60 acres of the south-
east quarter of section 5 and the south fractional part of
the north-east quarter of section 5, containing 13 acres,
more or less, all in township 8 north, range 4, west of the
fourth principal meridian, containing 233 acres, more or
less.   A sectional map of Henderson county, containing
township 8, north, range 4, west, and township 9, north,
range 4, west, was shown to the purchasers by Stanley
during the negotiations, and from this map they obtained
the number of acres in the farm and agreed upon the
division of the land among themselves.   This map was
admitted in evidence, and shows the number of acres
owned by Stanley to have been 717.29.   One acre of this
was school land and was occupied by a school house.
This acre was excluded, leaving 716.29 acres, according
to the Henderson county map.   Stanley was paid for 716
acres at $70 per acre, and an agreement was entered into
between him and J. Cecil Brook, whereby each deposited
$250 with Mr. Moir at Oquawka, with the understanding
that the land should be surveyed and the number of acres
ascertained from the survey. If the land contained more
than 716 acres, the excess was to be paid for out of the
deposit made by Brook, and if it contained less than 716
acres, the shortage was to be refunded to Brook out of
the deposit made by Stanley.   In accordance with this

agreement a survey was made of the entire farm, about eight months after the deeds were delivered, and it was therefrom ascertained that the farm contained 715.66 acres, including the school acre. While surveying it was discovered that the part of the north-west quarter of section 5 lying immediately south of the south-east quarter of section 32 was not included in any of the deeds, but it was included by the surveyor in the 715.66 acres. A settlement was made between Stanley and J. Cecil Brook upon the basis of the number of acres shown upon the plat made by the surveyor, Marshall, however, not being present at this settlement. From the 715.66 acres there was deducted by Brook 2.037 acres. Stanley claims that this deduction was made on account of the school acre and that part of the north-east quarter of section 5 that lies east of the road, which is the piece of land in dispute and which Stanley claims he never sold, while Brook testified that the deduction was made on account of the school acre and that part of the north-west quarter of section 5 that lies directly south of the south-east quarter of section 32, which was not included in any of the deeds from Stanley but which all parties agree should have been included in the deed to Marshall. This latter piece was not surveyed by itself and it was not ascertained how many acres it contained. The piece in the north-east of section 5 was surveyed by itself, and it was then ascertained that it contained 1.037 acres. Brook also testified that at the time of making the settlement he judged that both pieces contained the same number of acres, and that he stated to Stanley that he was deducting 1.037 acres for the piece in the north-west of section 5.

The following diagram represents sections 4 and 5, in township 8, north, range 4, west, and the south half of sections 32 and 33, in township 9, north, range 4, west, upon which the farm of Wyatt Stanley was located. The black portion thereof shows the tract involved in this

litigation. The acreage shown on this plat is taken from
the sectional map of Henderson county, and not from the
survey which was made after the sale of the land:

It will be observed that the north half of sections 4
and 5, measuring from north to south, is but a narrow

strip, and each of these half sections contains but a few acres. The section line between sections 32 and 33 does not form a continuous, straight line with that between sections 4 and 5, but is further west than the line between the two latter sections. A road corresponding with these section lines extends north and south through these sections, except that, coming south, instead of turning on the township line between sections 5 and 33 and running east to the north-east corner of section 5, it runs diagonally from the south-east corner of section 32 to the south-east corner of the north-east quarter of section 5 and cuts off a corner of the north-east quarter of section 5, (the 1.037 acres in dispute,) leaving that corner on the east side of the road instead of on the west side. The township line and the quarter section line through sections 4 and 5 approach each other as they are extended west, and the space between them is greater through section 4 than through section 5. The sectional map of Henderson county, however, shows that the road corresponds with the section lines and turns directly east on the township line at the south-east corner of section 32 and runs directly east to the north-east corner of section 5 and turns south at that point, which, if correct, would have placed all of the north-east quarter of section 5, including the 1.037 acres in dispute, on the west side of the road. That part of this tract which was east of the east line of the highway was fenced in with the north-west quarter of section 4. At the time of the sale there was no fence separating it from the north-west quarter of section 4, and east of it, on section 4, was a garden. It was purchased by Stanley as a part of a 90-acre tract, constituting a farm. It appears from the testimony of the purchasers, of Stanley and of Waldock, that nothing was at any time said, either by Stanley or by Waldock, about reserving any part of the land or excepting this piece from the sale. Seventy dollars per acre was agreed upon as an average price for the farm.

This piece was never particularly mentioned during the negotiations, and was a part of the Stanley farm. It was not known by the purchasers, according to their testimony, that Stanley claimed to have retained the ownership of that piece until over eight months after the deeds had been delivered, and after possession of the farm (aside from the tract in dispute, about the possession of which there is a conflict in the evidence,) had been surrendered to the purchasers.

APOLLOS W. O'HARRA, for appellant.

I. M. KIRKPATRICK, and J. W. GORDON, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is earnestly insisted by appellant that the finding of the decree that the tract of land in dispute was intended by all parties to this transaction to be included in the deed is not supported by the evidence. It will be observed from the foregoing plat that the land in question is in the heart of the farm which was owned by the appellant. Negotiations for the sale of this land were opened between Stanley and J. Cecil Brook at the home of the latter's father, in Henderson county, near the Stanley farm. At that time, according to Brook, Stanley desired and offered to sell his "farm." Shortly after this J. Cecil Brook and appellee went to look the farm over, and both testify that at this time Stanley offered to sell the "farm," and made no suggestion about reserving any part thereof. During the negotiations Stanley was several times at the residence of the elder Brook, and there, on at least one occasion, he took the map of Henderson county and pointed out thereon the land which he owned and desired to sell, it being the same land which the foregoing plat shows that he owned. Stanley himself says that when he first went to see John Brook and talked with him with reference to the land, he, Stanley, showed him the different pieces on the Henderson

county map, and in this connection it is important to observe that the disputed tract is not shown on that map as a separate tract, but is included with the remainder of the north-east quarter of section 5, as that map erroneously locates the highway by showing that, coming south to the township line, it jogs straight east to the north-east corner of section 5 and then runs south on the east line of section 5, which would throw this tract west of the highway, and this error makes it appear that this tract is in no way separated from the quarter section. All parties agree that nothing was ever said to either purchaser about reserving or excepting any of the land. Now, if Stanley pointed out the various pieces he was selling on that map and did not speak of excepting or reserving any portion thereof, he must have pointed out a tract which on that map included the small piece of land involved in this litigation. It is true that Marshall said, during the negotiations, that he was to have the land west of the road, only, but he also says he was to have all the land in section 5; and this inconsistency, we think, is explained by the fact that the Henderson county map was used, and that, treating the highway as being correctly located thereon, all the land in section 5 would be west thereof. Had the highway been where shown by that map then there would have been no inconsistency in the two statements. But, in any event, that inconsistency only went to the way in which the land was to be divided between Marshall and the other two purchasers. If Stanley sold the whole farm to the three, and Marshall was to have only that west of the road, that east of the road would be the property of the other purchasers, and as it now appears from the answer of the other purchasers that in the division among the purchasers, in accordance with which it was attempted to have the deeds made, this tract was to go to Marshall, that inconsistency becomes immaterial. Stanley himself testified that when the negotiations were opened the

purchasers wanted to know how much he would take an acre for his land; that this tract now in dispute was a part of his land; that he quoted them a price per acre and said nothing about any reservation; that afterward he directed Waldock, the real estate agent, to sell them his farm or his land at $70 per acre, but that he told Waldock not to sell the disputed tract, for the reason, as he says, that he might break up sometime, and in that event he wanted this for a homestead. Waldock reached a verbal agreement with the purchasers but said nothing about reserving this tract, and nothing was ever said by either Stanley or his agent about reserving it, and each of the purchasers swears that all the offers made by both Stanley and Waldock were to sell Stanley's "land" or "farm."

Appellant says he furnished the purchasers with the description of each piece of the land separately, and the evidence warrants the conclusion that J. Cecil Brook furnished to Kaiser, who wrote the deeds, the descriptions which were written therein. The description contained in the deed to Marshall, which it is sought to correct so that it will convey all the north-east quarter of section 5, reads as follows: "The south fractional part of the north-east quarter of section No. 5, containing 13 acres, more or less," all in township, etc. This language is regarded by counsel for appellant as being significant, and he inquires, why was the word "part" used if it was intended to convey the entire quarter? If the deed contained no description other than this one, it would be void for uncertainty in the description. It conveys absolutely nothing in the north-east quarter of section 5. There is no way of fixing the north line of the land which the grantor attempted to convey. The only conclusion which can certainly be drawn from the language used is, that the parties sought to convey approximately 13 acres off the south side of the quarter, and as the quarter section contained approximately 14½ acres, the conclusion

would be that the parties were attempting to convey practically all of the tract in dispute. We do not think that a consideration of this language aids the cause of appellant.

To authorize the reformation of a deed between parties on account of a mistake, the mistake must be that of both parties and must be proved by clear and satisfactory evidence. *Cleary* v. *Babcock,* 41 Ill. 271; *McDonald* v. *Starkey,* 42 id. 442; *Sutherland* v. *Sutherland,* 69 id. 481; *Rexroat* v. *Vaughn,* 181 id. 167.

Consideration of the evidence in this cause has led us to the opinion that the proof is of the character required to warrant the correction of the deed to Marshall as made by the court on the circuit. We are impelled to this determination of the matter largely by a consideration of the surrounding circumstances. This tract was practically in the center of this large farm, several miles from any town, where neither party would be apt to desire a sale of the farm without including this. Appellant seems to have been a keen business man, possessed of a large amount of property. He was moving to another State and investing his means there. His statement that he desired to reserve this piece of ground for a homestead in case he should meet with financial reverses seems to us in the highest degree improbable. He did not intend residing on this land succeeding the sale, and it would therefore be liable to the attacks of creditors should he become unable to pay his debts. Its location made it undesirable as a home for a man without other property or means, as it was not situated where its occupant could conveniently engage in any business other than farming the lands which appellant formerly owned and which he conveyed in this transaction. Again, when the deeds were delivered, payment was made on the basis of the acreage as shown by the county map. From the acreage so shown, the school acre only was then deducted. If appellant was reserving the tract in

question, as he now claims, and which he says he always regarded as containing one acre, we think it likely that he would at that time have had that deducted also.

Appellant also bases his defense to the bill upon an estoppel. The deed to Marshall, it is conceded by all parties, is erroneous, and should be reformed so that it will convey that portion of the north-west fractional quarter of section 5 which lies directly south of the south-east quarter of section 32, and the decree so reforms it by directing a conveyance of that land. This tract was wholly omitted from the deed, which does not contain any language by which any attempt was made to convey it. When the land was surveyed, J. Cecil Brook called Stanley's attention to the fact that this tract was omitted and asked him to convey it to Marshall. Stanley says he replied that he would convey it if the deed did not cover it, and Brook says he first said he would convey it and then refused. However this may be, it is certain that Stanley and J. Cecil Brook proceeded to settle the shortage in the acreage without this tract in the north-west of section 5 being conveyed.

When the survey was made, Stanley had that portion of the north-east quarter of section 5 which lies east of the highway surveyed separately, and it was found to contain 1.037 acres, and in adjusting the acreage this amount was added to the school acre, making 2.037 acres which was deducted from the total acreage. Appellant's position is, that J. Cecil Brook, who was acting for the purchasers in making this settlement, acted on the theory that this part of the north-east quarter of section 5 was not included in the sale and should not be included in the acreage, and that Stanley refunded to the purchasers for the same at the rate of $70 per acre, and consequently Marshall is now estopped to say that this tract last mentioned should be included in the deed. An examination of the above plat will show that the half section line running north through the middle of section 5

and through the middle of section 32 has in it the same jog to the west, at the township line, as had the section line running north on the east side of sections 5 and 32, while the narrow strip of land which composed the north half of section 5 grew narrower as it was followed to the west, so that the portion of the north-west of section 5 which, it is agreed, was omitted from the deed by mistake, was only slightly less in extent than the portion of the north-east quarter of section 5 which is in question would have been had the highway, running south along the east side of section 32, continued straight south to the half section line running east and west through section 5, as it appears to do from the evidence of some of the witnesses, although the plat in the record, by which we have been governed, shows the angle as does the plat above set forth. J. Cecil Brook swears that the 1.037 acres was deducted in figuring the shortage, because the part of the north-west quarter of section 5 above referred to, and which had been included in the survey, was not included in the deed; that while he did not know its exact dimensions, he knew that the jog west in the north and south lines was the same in the middle of section 5 as at the east line thereof, and that the portion of the north-west of section 5 above described, which should have been included in the deed, was substantially the same in extent as the portion of the north-east of section 5 which lay east of the highway, and that the figures showing the amount of the latter were accordingly adopted. There is no testimony except that of these two men as to which tract they intended to figure out when they deducted the 1.037 acres. While it is true that support is lent to Stanley's testimony by the fact that these figures gave the exact contents of the tract he says was figured out and were only approximately correct if it was the other tract which was deducted, still, if Stanley is right about the matter, then no deduction at all was made for the portion of the north-west of section 5 in question,

but, on the contrary, Brook consented to pay for, and did pay for, that portion of the north-west of section 5 when there could be no pretense that the deed conveyed it, and when he, Brook, knew that the deed did not convey it,— a theory which seems improbable, considering the fact that Stanley had at that time, notwithstanding Brook's request, failed to make any conveyance to correct the error in the deed occasioned by the omission of that part of the north-west quarter of section 5. In our judgment the evidence does not preponderate in favor of the contention that the portion of the north-east quarter of section 5 which lies east of the public highway was deducted from the total acreage in figuring the shortage. Where an estoppel *in pais* is relied upon, the facts out of which it is claimed the estoppel arises must be established by a preponderance of the evidence, and (disregarding other objections to the successful interposition of this defense in this case) as there is no such preponderance here, the doctrine of estoppel cannot be successfully invoked.

The decree finds that when the survey was made, Stanley paid back $72.59 on account of the shortage occasioned by omitting from the deed that portion of the north-west fractional quarter of section 5 which was included in the sale, and decrees that Marshall pay back that $72.59, with interest, and that Stanley and wife, upon payment thereof, execute the deed directed to be made. It is objected that neither bill nor proof supports this finding. As appellant does not question the propriety of the action of the court in reforming the deed by including therein the part of the north-west of section 5 which was owned by Stanley, the error in this respect, if any exist, is a harmless one. It insures to the appellant the return of his money.

The action of the court below in apportioning the costs is assigned as error. Nothing is said in support of this assignment except that appellant should not have been required to pay any part of the costs. It does not

appear to us that the chancellor abused his discretion in making this apportionment.

The decree of the circuit court of Henderson county will be affirmed.                    *Decree affirmed.*