Almer Coe & Company, Inc., a Corporation, and S. S. Hollander, Inc., a Corporation, Plaintiffs-Appellees, v. American National Bank and Trust Company of Chicago, as Trustee Under Trust No. 10388, Defendant-Appellant.

### Gen. No. 48,961.

First District, Second Division.

October 15, 1963.

Rehearing denied December 3, 1963.

Louis Hershman, of Chicago, for defendant-appellant.

Warren E. King and Edward Graff, both of Chicago (Warren E. King, of counsel), for plaintiffs-appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Almer Coe & Company, Inc., and S. S. Hollander, Inc., filed an amended complaint against the American National Bank and Trust Company of Chicago as Trustee under Trust No. 10388 to reform two leases, one by each plaintiff entered into with the Trustee for occupancy of the spaces known as Rooms 414 and 500 respectively at 6 North Michigan Avenue, Chicago. A Master in Chancery recommended the reformation of the leases by reducing the rent therein provided and the entry of judgment for the plaintiffs and against the defendant for the difference between the amount of rent in each lease and the reduced amount for the period during which the leases had been in operation, plus interest and costs. The defendant appeals from the decree entered in accordance with the Master's report.

The defendant holds title to the land and building as Trustee by virtue of a deed in Trust on the land and building and a land trust agreement. Dr. S. S. Hollander is the President of both plaintiff companies. Max Krauss, Max Siegel and Philip Kargman were the beneficial owners of the Trust. Frank M. Whiston & Co., a copartnership engaged in the real estate business, managed the building during 1955 under a contract of management. In the early part of the summer of 1955 Dr. S. S. Hollander, the President of the plaintiff corporations and who owned or controlled the majority interest in each corporation, began negotiating with Max Krauss one of the beneficiaries of the trust for the rental of space in the building. Subsequently he also negotiated with Max Siegel, also a beneficiary of the trust and with Frank M. Whiston & Co., the building manager. Room 414 was to be occupied by Almer Coe & Co., and Room 500 by S. S. Hollander, Inc. The base rent was agreed upon to be $3.79 per square foot for Room 414 and $3.84 per square foot for Room 500. Dr. Hollander presented plans for certain alterations of each space and estimates of the costs thereof were submitted by the building manager. The estimate for the cost of alteration of Room 414, to be occupied by Almer Coe & Co., was given as $23,060. The cost of alteration for Room 500, to be occupied by S. S. Hollander, Inc., was given as $22,200. The cost to Almer Coe & Co., was amortized as 71 cents per square foot per month and the rent set at $825 per month. The cost to S. S. Hollander, Inc., was amortized at $1.06 per square foot per month and the rent was set at $1,041 per month. In addition the beneficial owners of the building agreed to expend $6,740 for alterations which were not to be charged to the plaintiffs.

The estimate for the total cost was prepared by the Superintendent of the building who works under the

106

direction and control of Whiston & Co., the manager of the building. Almer Coe & Co., paid $10,000 on account of the alterations, which were deducted from the cost chargeable to the plaintiff. This amount was paid to Whiston & Co. On August 20, 1955, Max Krause, Max Siegel and Philip Kargman served notice upon Whiston & Co., terminating the contract of management 120 days after date. In September 1955, Max Krauss told Dr. Hollander that he did not think the alterations were going to be as high as estimated and that Dr. Hollander would be entitled to the difference if it did not run that high. Frank Whiston testified that the figure of $22,200 and the figure of $23,060 were discussed in detail at the time of this lease. Reference was made to the accuracy of the figures. "It was understood that these were estimates; that if perchance that would come under the estimates that we had, that there would be consideration given to the tenant for the difference between the estimates and the total cost of work, a rebate to the tenant. This conversation was prior of course to the time this lease was signed, but whether it was a day or week, I do not recall. These were never made up unless the amounts were agreed upon between the lessor and lessee. This conversation took place between Dr. Hollander and myself."

After the rental for each space had been agreed upon the manager of the building wrote 6 letters to the plaintiffs regarding minor facets of the alterations. Each of the letters from the manager was read by Dr. Hollander and signed by him or by a Vice President of Almer Coe & Co., to signify that they had read and approved the contents. The leases were read and approved by plaintiffs' attorney.

On October 24, 1955, the defendant received letters from Max Krauss and Max Siegel, directing it to execute a lease to each of the plaintiffs. On the same

date the defendant executed a lease to Almer Coe & Co., and a lease to S. S. Hollander, Inc., in each instance as Trustee under Trust No. 10388, and not individually. The plaintiffs moved into their respective offices during December 1955. In May 1956, Mr. Kargman told Dr. Hollander that he was entitled to a refund in rent and that he was going to see to it that he received whatever was due when they got the final figures. After January 1956, Mr. Krauss told Dr. Hollander that he had learned that the cost was lower than anticipated and that he would be taken care of in the reduction of the cost of the lease or in cash. He said that he did not know how they would do it. The sum paid to Whiston & Co., for alterations for the space occupied by S. S. Hollander, Inc., was $18,132.33 and the amount paid for the alterations of the space occupied by Almer Coe & Co., was $29,-171.19. Subsequently the beneficiaries of the Trust discovered that the manager had added 15% plus 15% over and above the actual cost, as overhead and profit and sometimes 10% plus 10%. The leases were by their terms to expire on April 30, 1964, with a 2-year option privilege extension to the lessees. The dispute with Whiston & Co. was settled by the latter returning to the beneficiaries $25,000 out of $31,044.90 claimed by them. Max Siegel and Max Krauss, the two beneficiaries who negotiated the leases with Dr. Hollander were deceased at the time of the hearings before the Master.

Plaintiffs' theory is that as a consequence of a mutual mistake of fact they are entitled to reformation of the leases, citing Krabbenhoft v. Gossau, 337 Ill 396, 169 NE 258 and other cases. Plaintiffs say that the lease analyses are the evidence that prove the fact, "the fact being the belief of the parties that the rehabilitation would cost $52,000." Plaintiffs cite as "another mutual mistake of fact" that Whiston &

Co., charged the lessor "overhead and profit" of $6,-016.46 on one job and $4,421.86 on the other or a total of $10,438.32, and that this was included as part of the costs in preparation of the estimate. Plaintiffs point out that subsequent to the execution of the lease Whiston & Co. refunded $25,000 to the owners which was 80.528% of the total overhead and profit charged by Whiston & Co., on plaintiffs and other tenants' jobs. Plaintiffs assert that no one, at or prior to the execution of the leases contemplated this refund. They say that the proportionate share of the refund attributable to their job was $8,405.76 (80.528% of $10,438.32). Plaintiffs state that had Whiston or the plaintiffs known that overhead and profit was not a proper element of cost, the cost to the lessor would have been reduced by that $8,405.76, plaintiffs rent would have been proportionately less and that this is what plaintiffs seek to accomplish by reforming the leases.

■ A careful reading of the record and consideration of the cases cited convinces us that no mutual mistake of fact existed between the parties at the time the leases were executed. The leases expressed the full intention of the parties. No fraud or inequitable conduct is charged or evidence thereof introduced. Each lease is clear as to terms and as to the rental to be paid. The lessor agreed to make the alterations at its expense. No cost figures as to the alterations appear in either lease. There is no claim that the leases had been erroneously drawn or that any provision was erroneously omitted therefrom. The negotiations for the two leases began in the summer of 1955 and were conducted on behalf of plaintiffs by Dr. Hollander as President of both companies. He is a doctor of optometry. He organized S. S. Hollander, Inc., in 1933. This corporation is in the business of leasing space in department stores for the sale of

optical supplies to the consumer. It has numerous leased spaces. In 1954 Dr. Hollander purchased the controlling interest in Almer Coe & Co., which now has 4 stores in Chicago. Dr. Hollander read all the leases and signed some of them. In the course of the negotiations for the leases in the instant case, Dr. Hollander read all the letters sent to both plaintiffs by the building manager regarding various facets of the alterations and signed them as indication of his approval. He read both leases and made several minor changes along which his initials and that of the building manager appear. The record shows careful and prudent handling in the negotiation for and the execution of the leases and negates any contention that a mistake occurred in the execution of the leases. Plaintiffs by their officers knew that the figures of $23,060 and $22,200 were estimates. The true costs could have been higher or lower. The lessor and the lessee are bound by the leases. At the time the leases were executed the parties knew that the costs might be higher or lower than the estimates.

 The province of reformation is to make a writing express the bargain which the parties desired to put in writing. In Baker v. Pierce, 197 Ill App 158, the court, quoting Cyc Vol 34, p 947, said, p 164: "Where an instrument is executed according to the intention and understanding of the parties at the time of execution, and with full knowledge of the facts, such knowledge and execution will operate to defeat an action to reform in that it negatives mutual mistake. It is not what the parties would have intended if they had known better, but what did they intend at the time, informed as they were." In Christ v. Rake, 287 Ill 619, 122 NE 854 the court said, p 622: "A written instrument will not be reformed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike

110

as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty." See also Russell v. Shell Petroleum Co., 66 F2d 864; Maryland Casualty Co. v. U. S., 169 F2d 102, 111; Harley v. Magnolia Petroleum Co., 378 Ill 19, 29, 37 NE2d 760. Relief of reformation rests upon the theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, some provision agreed upon was omitted, and the action is to add to the contract agreed upon by inserting the provision omitted, or strike out one mistakenly inserted. Harley v. Magnolia Petroleum Co., 378 Ill 19, 37 NE2d 760. Neither Count of the Amended Complaint alleges that an oral agreement was to be inserted in the leases but through error was omitted therefrom. There is no evidence that the leases do not reflect the true agreement of the parties or that any item was included which should have been omitted or was omitted which should have been included. The parties knew that the figures submitted as the cost of alterations were estimates. With this knowledge they executed the leases. Equity cannot make a new agreement for the parties under the color of reforming the old one made by them, or add a provision which they never agreed upon. Harley v. Magnolia Petroleum Co., 378 Ill 19, 28, 37 NE2d 760.

■ Plaintiffs maintain that they are entitled to the excess of estimated costs over actual costs on the theory of unjust enrichment. The theory of unjust enrichment was not raised in the pleadings or at the hearing before the Chancellor and was not mentioned in the Master's report. This theory of the plaintiffs is also based on mutual mistake. If there was a mutual mistake plaintiffs would be entitled to relief. We hold

111

that the plaintiffs have failed to prove that a mutual mistake exists in the terms of the lease. The leases were negotiated by competent businessmen and lawyers. The terms were carefully considered and the parties expressed their agreement in the leases. The leases are binding on both parties. We have held that the plaintiffs are not entitled to a decree reforming the leases. It follows that there is no unjust enrichment.

It is unnecessary to extend the opinion by discussing another point presented by the defendant. For the reasons stated the decree is reversed and the cause is remanded with directions to dismiss the complaint for want of equity.

Decree reversed and cause remanded with directions.

FRIEND and BRYANT, JJ., concur.