MARIE KOLKOVICH, Plaintiff and Counterdefendant-Appellee, *v.* JOSEPH L. TOSOLIN, JR., Defendant and Counterplaintiff-Appellant—(JOSEPH L. TOSOLIN, JR., Third-Party Plaintiff-Appellant, *v.* EDMOND H. REES, Temporary Exr., of the Estate of Joseph L. Tosolin, Sr., Third-Party Defendant-Appellee).

(No. 12209;

Fourth District—April 4, 1974.

*Rehearing denied June 17, 1974.*

Phelps, Russell, Carmody & Kasten, of Carlinville (Carl E. Kasten, of counsel), for appellant.

McGrady, Madden and McGrady, of Gillespie (Denis A. McGrady, of counsel), for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal involves reformation of a deed pursuant to the counterclaim of defendant-counterplaintiff-appellant at the conclusion of a suit instituted by the plaintiff-counterdefendant-appellee seeking a declaratory judgment as to her interest in real estate devised to her by the father of both parties; and the taxing of attorney's fees against the defendant-counterplaintiff-appellant.

The plaintiff, Marie Kolkovich, and defendant, Joseph L. Tosolin, Jr., are brother and sister, with the dispute involving the boundary between a tract of land given to Joseph by their father while alive, and the tract devised to Marie by will. On November 18, 1970, Marie filed a complaint for a declaratory judgment to ascertain her property interest under her father's will, alleging that their father was dead, that Joseph had been appointed executor when the will was admitted to probate on April 9, 1968, that the will had devised certain real estate to Marie, but that by deceit and various improper methods, Joseph attempted to coerce Marie into signing deeds and in other ways willfully attempted to mislead her and has continually refused to turn her property over to her, and otherwise abused his discretion as executor. Joseph's answer alleged the affirmative defense of laches and counterclaimed for reformation of a deed dated July 20, 1960, conveying a tract of land 95 feet by 157 feet to Joseph by his father. The answer alleged that from 1956 on the father had aided Joseph in building a house which was partially on the deeded

property and partially on property retained by the father and willed to Marie.

A bench trial was held and Joseph testified that in 1956, shortly before he began construction of his house, his parents gave him a tract of land measuring 95 by 157 feet immediately adjacent to the tract on which the parents' house was located. Joseph testified that the western boundary was to be midway between the two houses where there was a line of bushes and a fall in elevation. Joseph testified that in 1960 he and his parents decided that a deed should be made and together they measured a tract 95 feet by 157 feet, the father telling Joseph to make the boundary line so as to split the difference between Joseph's new home and the parents' home. He further testified that in March 1969, while serving as executor for his father's estate, he had a survey made which gave him his first knowledge that the measurements described in the 1960 deed and the father's will drawn in 1966, leaving the remaining portion of the land whereon the parents' house was located to Marie, placed his west boundary near the middle of his garage, rather than between the two houses along the line of bushes. Joseph said that he had the survey made while he was executor which showed most of his house was not located on the property described in his deed and in the father's will, and that he then had the surveyor make a survey showing "what my dad wanted". Knowing the error, he continued to act as executor and filed the final report closing the estate without taking any action on the matter.

Joseph called the father's attorney, who testified that when the father engaged him to write his will he had stated he wished to leave some real estate bounded by the bushes to his daughter Marie, but the attorney had instructed the father to bring the measurements which he then used to prepare the will. A neighbor who lived to the west of the father's home testified that he saw Joseph and the father working on the house from the time they began construction and was allowed by the court to testify to a conversation with the father about his will to show the father's state of mind. According to this witness, the father stated that he intended Marie to get his house and enough land around it to encompass the cistern on the east side. The neighbor further testified that he had seen the father and Joseph making measurements, and again referring to a conversation with the father concerning the will, the neighbor stated that the father had stomped his foot where he had intended the boundary to be near the point claimed by Joseph. Joseph's other witnesses were various contractors who testified that they had dealt with him rather than with the father in building the house, and that Joseph had paid for the materials and labor.

The plaintiff Marie testified that Joseph brought their father's will to her in April 1968 shortly after it was admitted to probate, and that when she could not understand the extent of the property described in the will, Joseph bargained with her, giving her three sheds, all of the contents of their father's house, and agreeing to charge no executor's fee, but refused to tell her exactly where the boundary line was, even when pressed. Marie testified that neither their father's attorney nor Joseph would tell her the extent of her land as described in the will so that finally she obtained an abstract and employed a surveyor in early 1970, thereby finally determining that the boundary of the land devised to her by her father's will was located farther to the east than Joseph had represented to her.

The trial court first found that Marie's action was barred by the laches of her father, since she would take no greater interest than he had. The court further found that there was a mutual mistake as to the property described in the deed executed by the father and mother as grantors, and ordered a reformation of the deed to include Joseph's house as was apparently intended. The court further ordered Joseph to pay all costs, including $1000 attorney's fees payable to Marie's counsel. Joseph's attorney prepared, pursuant to the court's direction, an order embodying the court's initial finding which the court signed and was filed. The circuit clerk received and forwarded to plaintiff's attorney, attorney's fees ordered. Thereafter Marie filed a post-trial motion, claiming that Joseph was given property greater than that intended by their father in that he was allowed to keep all the property covered by the allegedly erroneous deed, plus was given a portion of that devised to Marie without paying any compensation for it. On May 23, 1972, the trial court vacated its March 23, 1972, order finding that it did not reimburse Marie for "the land taken from her from the order" and referred to a tract 69 feet by 157 feet as being "taken". By letter the court gave the parties 10 days to agree on compensation for that tract, and stated that the tract intended to be conveyed was 95 feet by 157 feet and that that would be a part of any new order entered by the court.

The trial court denied Joseph's motion to strike Marie's post-trial motion, and ordered preparation of an order signed on December 5, 1972. That order continued the taxation of attorney's fees against Joseph, and carved out an irregular-shaped parallelogram 80.21 feet by 69.18 feet around Joseph's home adjacent to the rectangle described in his original deed, so that Marie would own the road frontage directly in front of most of Joseph's house.

■■ It is within the jurisdiction and duty on the courts of equity to correct mistakes in conveyances by reformation, but before a deed will

be reformed satisfactory evidence of a mistake must be presented, and the evidence must leave no reasonable doubt as to the mutual intention of the parties, a mere preponderance of the evidence being insufficient. (*David v. Schiltz*, 415 Ill. 545, 114 N.E.2d 691.) Courts should proceed with great caution in reforming written instruments. (*Booth v. Cole Corp.*, 121 Ill.App.2d 77, 257 N.E.2d 265.) The court may not make a new agreement for the parties under color of reforming the one made by them, nor can it add a provision which the parties never agreed upon. (*Almer Coe & Co. v. American National Bank and Trust Co.*, 44 Ill. App.2d 104, 194 N.E.2d 14.) The basic rule is, therefore, that a court of chancery may reform an instrument so as to make it conform to the intentions of the parties and the agreement between them. *Lux v. Lelija*, 14 Ill.2d 540, 152 N.E.2d 853.

In the instant case there is little doubt that reformation of the deed was in order, there being sufficient evidence showing a mutual mistake on the part of the parties; the fact that the grantee, with the acquiescence—in fact with the aid of the grantor—built the house on the tract of land conveyed where the grantee lived with the obvious knowledge of the grantor for approximately 12 years before the grantor's death. However the real issue on appeal is the extent of the reformation as ordered by the trial court. Joseph contended and the trial court found that the parties intended Joseph's tract to be 95 feet by 157 feet, with the description in the deed locating it farther east than intended, resulting in more than half of Joseph's house being built on land retained by the father and devised to Marie. The three most plausible solutions would be (1) to reform the deed to move both the east and the west boundaries to the west, so that Joseph would own a tract 95 by 157 feet as apparently intended, simply moved to the east of that described in the deed and the will; (2) move the west boundary west to a point between the houses, leaving the east boundary as it was, which would result in Joseph having a rectangular tract which appears to have been the intent of the parties, but somewhat larger than the 95 feet by 157 feet dimensions to the detriment of Marie's devise; (3) merely reform the deed to give Joseph all the land on which his house sits, in addition to that described in the deed, but no more. The third method was chosen by the trial court in its final order and resulted in Joseph receiving an irregularly-shaped figure with eight sides made up of the tract described in the deed, plus a parallelogram on its west side measuring 69.18 feet by 80.21 feet around and including Joseph's house. By carving out such a tract and in addition ordering Joseph to compensate Marie for the land taken from her devise, it appears the trial court has indulged

in equitable partition, particularly in the face of its specific finding that the parties intended to convey a rectangular tract 95 feet by 157 feet.

As to granting any reformation of the deed in favor of Joseph, Marie contends that Joseph should be estopped because he was a party to the taking of the measurements used in his deed and in the will, and also due to his failure to take action to correct the matter while serving as executor for their father's estate, and by his wrongful action in closing the estate when he knew of the mistake in description. In *Skelly v. Ersch*, 305 Ill. 126, 137 N.E. 106, the basic rules of reforming a deed were said to be: (1) the mistake must be one of fact and not of law; (2) proof must clearly and convincingly show that a mistake was made; (3) the mistake was mutual and common to both parties to the instrument. The supreme court in *Skelly* stated that estoppel does not arise where the acts of the parties sought to be estopped were due to ignorance by reason of an innocent mistake. It was said that in order to bar the reformation of a deed in case of a mutual mistake, negligence must be so gross as to amount to a violation of a positive legal duty. It also said that a necessary element of estoppel is that the party relying upon the representation made was misled to his injury, suffered loss of a substantial character, or has been induced to alter its position for the worse in some material manner. The reasoning behind this reluctance to allow estoppel to be used against one seeking reformation is that nearly every mistake necessarily implies some degree of negligence, so, therefore, the mere fact that the plaintiff was negligent will not necessarily bar his right to reformation. *Blumenfeld v. Neuman*, 350 Ill.App. 306, 112 N.E. 2d 742.

"The allowance and recovery of costs rests entirely upon statutory provisions and no liability for costs exists in the absence of statutory authorization. Any party to an action, claiming the right to recover costs from his adversary, must found his right upon some provision of a statute. * * * A court of chancery may be vested with a power to exercise a discretion in awarding costs, but the power to act must come from a statute, and the discretion must be confined to that which is authorized by legislative enactment." (*Ritter v. Ritter*, 381 Ill. 549, 553, 46 N.E.2d 41, 43.) In a few areas chancery courts have been given prescribed discretions. One such area is in section 41 of the Civil Practice Act, which grants discretionary awards of attorney's fees where untrue allegations are made in a manner where the record shows bad faith on the part of the pleader. (*Grandys v. Spring Soft Water Conditioning Co.*, 101 Ill. App.2d 225, 242 N.E.2d 454.) The purpose of that statute is to penalize a litigant who brings up false or frivolous matter, thereby causing his

opponent to spend money for an attorney. (*Schroeder v. Busenhart,* 133 Ill.App.2d 180, 272 N.E.2d 750.) The alleged bad faith of Joseph transpired before the litigation began.

Another exception to the general rule which might conceivably have been in the mind of the trial court in the instant case is paragraph 68 of chapter 106 (Ill. Rev. Stat., ch. 106, par. 68), providing for the apportionment of costs, including a reasonable fee for plaintiff's attorney, in proceedings for the partition of real estate when the rights and interests of all the parties in interest are properly set out in the complaint, and no good and substantial defense to the complaint is interposed. The clear purpose is to give the court discretion to apportion fees so that all persons who benefit from the apportionment suit pay their equitable share of the cost. In the instant case, the trial court gave no reasons or authority for awarding attorney's fees to Marie, but a reading of the entire record with voluminous motions and pleadings suggests that the taxing of attorney's fees in the instant case was based on a feeling that it was equitable because Joseph, by his dilatory if not unscrupulous conduct, caused this litigation to become so expensive to the plaintiff. It appears that the trial court likely felt that Marie had been "forced" to bring this action and expend money which she would not have been if Joseph had acted properly and in good faith when he discovered the erroneous description in his deed and in the will, and so awarded fees to the "innocent" party who actually lost property as a result of the lawsuit.

■■ Assessment of costs in an action for reformation of an instrument rests largely in the discretion of the court. (*Schmitt v. Heinz,* 5 Ill.2d 372, 125 N.E.2d 457.) For example, where it was decreed adversely to defendant's claim that the deed be reformed and that the plaintiff pay defendant a certain sum, the court properly required the defendant to pay two-thirds of the cost. (*Stanley v. Marshall,* 206 Ill. 20, 69 N.E. 58.) The traditional rule has been that a plaintiff is entitled to costs only after he has gone to judgment in his favor (*Sweetland v. Tuthill,* 54 Ill. 215) because only a successful party could recover his costs. (*Hodge v. People for the use of Franklin,* 78 Ill.App. 378.) In the absence of a statute, attorney's fees and the ordinary burdens and expenses of litigation would not even be allowed to a successful party. (*House of Vision, Inc. v. Hiyane,* 42 Ill.2d 45, 245 N.E.2d 468.) Attorney's fees are never allowed to unsuccessful litigants and are not allowed to successful litigants, either in courts of law or in courts of equity, in the absence of a statute or agreement authorizing amounts. (*O'Hare v. Moniak,* 110 Ill. App.2d 327, 249 N.E.2d 178.) In the instant case, the trial court gave no reason nor authority for the taxing of attorney's fees, although, as suggested above, it appears to have been based on a feeling of what was

equitable since Joseph, against whom the costs and fees were assessed, prevailed on his counterclaim for reformation of the deed, and, by so doing, received land which the will devised to the plaintiff. Costs were not recoverable at common law and the courts have no power, in the absence of statutory authorization, to tax costs against anyone merely on equitable grounds. *Home for Destitute Crippled Children v. Boomer,* 320 Ill.App. 541, 51 N.E.2d 830.

■■ For the reasons stated above, the order allowing attorney's fees must be reversed, there being no evidential basis and no statutory authority for their entry. The trial court properly found that reformation of the deed was appropriate, there being sufficient evidence that the parties had made a mutual mistake in supplying the description used in the deed and the subsequent will of the father. However, as it appears that the terms of the second reformation order here appealed from did not achieve the intent of the parties to the deed as found by the trial court, but was rather a compromise partition initiated by the court, the reformation order is reversed and remanded with directions to enter an order reforming the deed to create the rectangular tract with the boundary passing between defendant's house and the house on the tract of land devised to plaintiff.

Reversed and remanded.

SMITH, P. J., and KASSERMAN, J., concur.