750

*In re* ESTATE OF WALTER SZOREK, Deceased (Judy K. Aust, Plaintiff-Appellant, v. Liberty Savings & Loan Association, Defendant-Appellee).

First District (6th Division) No. 1—88—2776

Opinion filed February 16, 1990.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Howard A. London, of counsel), for appellant.

Martin, Craig, Chester & Sonnenschein, of Chicago (Thomas B. Cassidy and William A. Kummerer, of counsel), for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

This is an appeal from an award of attorney fees and costs in favor of defendant, Liberty Savings and Loan Association, and against plaintiff, Judy Aust, following a hearing on a declaratory judgment action filed by plaintiff against defendant which was consolidated with a citation to recover assets filed in a probate proceeding by the administrator of the estate of Walter Szorek, deceased. Both actions sought to recover funds on deposit in a certificate of deposit in the names of decedent and plaintiff as joint tenants with right of survivorship.

Walter Szorek died intestate on March 20, 1987, after several years of illness, a leg amputation, and a number of hospitalizations. Prior to his death and at the direction of Szorek, plaintiff transferred approximately $72,000 of Szorek's funds then on deposit in a Fairfield Savings and Loan account to a certificate of deposit with defendant Liberty Savings and Loan Association. The certificate of deposit account was opened on February 6, 1987, in the names of Walter Szorek and plaintiff as joint tenants with right of survivorship.

Upon Szorek's death, plaintiff made the necessary funeral and burial arrangements. Sometime thereafter, when plaintiff attempted

to collect the funds from defendant as surviving joint tenant, she was advised by an officer of defendant association that because of a discrepancy of Szorek's date of birth on the signature card and his date of birth on the death certificate, they would not pay the funds to her.

Within weeks of Szorek's death, the public administrator opened a probate estate and was appointed administrator by the court. The heirship identified unknown heirs as the beneficiaries of the estate. It should be noted that 16 months later, when the estate was closed, the remaining estate assets were paid over to the Cook County treasurer to be held for the unknown heirs of Szorek. The inventory subsequently filed by the administrator listed as estate assets a Fairfield Savings and Loan Association checking account, a Fairfield Savings and Loan Association certificate of deposit, a Medicare check, and the certificate of deposit at defendant association, all for a total estate of $151,592.62. On August 3, 1987, the administrator filed a petition to recover assets for the joint tenant certificate of deposit funds in defendant's association with notice served on defendant but without notice served on plaintiff. The record discloses that notice to plaintiff was misaddressed, not delivered, and returned to sender.

On August 3, 1987, plaintiff filed a declaratory judgment suit in chancery against defendant to recover the joint tenancy funds in the certificate of deposit account. Plaintiff moved for summary judgment on September 8, 1987. Defendant moved to consolidate the chancery case with the probate litigation, and the matters were consolidated and thereafter proceeded in the probate court. Plaintiff's summary judgment motion was denied on January 26, 1988.

Following a hearing on the consolidated citation and declaratory judgment petitions on April 8, 1988, the trial judge ordered defendant to turn over the entire account balance plus accrued interest to plaintiff except for the sum of $3,500 reserved pending a hearing on defendant's petition for fees and costs. On July 19, 1988, the trial judge awarded defendant the sum of $3,757.39, for attorney fees ($3,647) and costs ($110.39) to be paid from the funds reserved and the balance to be paid by plaintiff. Plaintiff's petition for reconsideration was denied, and plaintiff filed this appeal challenging only the award of fees and costs to the defendant.

Plaintiff raises three grounds for her appeal: (1) that she did not enter into any agreement with the defendant for payment of attorney fees incurred by defendant in defense of the action brought by plaintiff, the depositor and surviving joint tenant, to recover account proceeds which the court found to be rightfully hers; (2) that by its

failure to pay the account proceeds to her as the surviving joint tenant, thereby compelling her to file suit to recover funds rightfully hers, defendant is precluded from recovering attorney fees and costs even if an agreement to pay such expenses exists; and (3) that an award of attorney fees and costs in the amount of $3,757.39 is patently unreasonable.

We first consider the agreement entered into by the parties when the account was created. For purposes of this appeal we consider the agreement only as it pertains to plaintiff and defendant.

Upon deposit of Szorek's funds, defendant required plaintiff and Szorek to execute signature cards as part of its customary process in opening a certificate of deposit account. The language of the signature card states in pertinent part:

> "[A]ny other outside expense incurred relative to this agreement may be charged to it.
>
> The undersigned agree that this account is subject to and is to be administered in accordance with the rules established by the Board of Directors for the account established herewith, and acknowledge receipt of a copy of said rules."

Also part of the record is defendant's disclosure statement for certificates of deposit which contains this language:

> "Account Rules and Regulations for Savings and Certificate of Deposit. By signing the signature card associated with your Liberty Savings savings account and a variety of certificates of deposit, you, the account holder, have agreed that your account be bound by this agreement, now in force and to such other rules as may be changed and adopted hereafter. The agreement includes signature cards, transfer authorizations, separate written agreements used to establish and maintain the account, by-laws of the Association, State of Illinois and federal laws, and all supervisory rules and regulations. We both agree to these terms. If there is a conflict between this agreement and something said by one of our employees, the provisions of this agreement will control the determination of the difference.
>
> &ast; &ast; &ast;
>
> 8. Death or Incompetence: The Association may prohibit or restrict withdrawals upon being notified of the death or incompetence of an account holder until all the obligations according to this Agreement and the law have been met.
>
> &ast; &ast; &ast;
>
> 11. Expenses and Charges: All expenses incurred by the As-

sociation relative to this account on account of summons, subpoena, garnishment, citation, attachment, levy or any other proceedings affecting this account, including court costs and attorney's fees, shall be charged to the account holder and may be reimbursed and deducted from this and any other account in this Association in which said account holder has an interest. The charges shall be based on the Association's Schedule of Charges then in effect.

All joint account holders agree to the Association's right of payment for charges of any one of the joint owners of the account.

When your account becomes involved in legal proceedings, your use of it may be restricted or prohibited. In the event the institution becomes a party to any legal proceedings between you and third persons, or between account holders, it is agreed that the account holders will pay, compensate and reimburse all liability, costs, charges and expenses, including attorney's fees and court costs, incurred by the Institution as a result of such proceedings."

■■ Plaintiff argues that the printed language of the signature card was an adhesion contract, standardized and offered to the depositor without any realistic opportunity to bargain or to do anything other than acquiesce to its specified terms. While the depositor plaintiff here was asked to sign the association's standardized form of agreement to open the account, she did not object to its terms and, of course, she could have elected to invest the funds elsewhere and sought other terms. Having chosen to open this account, plaintiff agreed to all of its terms.

■■ Plaintiff next argues that the size of the type on the printed signature card is so small that it is unreadable without magnification and that defendant's reliance on the signature card to establish the agreement between the parties and the knowing acceptance of its terms is contrary to the statutory requirements of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). The Act, however, does not apply to banking practices, but rather protects a consumer who purchases merchandise or home improvement services for his own use. Plaintiff argues here that the signature card was virtually unreadable, and she was unaware that the so-called agreement provided that defendant was entitled to recover litigation attorney fees and costs from the depositor should the account be legally challenged in a court of law.

It is undisputed that this account was opened in the names of Szorek and plaintiff as joint tenants with right of survivorship. Plaintiff acknowledges that she provided defendant with the identity information appearing on the signature card as "A. Szorek Walter 3-15-23 and B. Aust Judy K. (dau.) 1-13-55." The signature card language also provided: "It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties are and shall be conclusively intended to be a gift ***."

At the April 8, 1988, hearing plaintiff's responses to questions about events following her visit to the defendant association to open the account disclosed that she signed the card there and then took the bank book, signature cards and "papers" to Szorek and left them for his signature and to be mailed by him to the defendant. She clearly had the opportunity at that time to read its terms with any assistance needed if she so desired.

We next consider whether plaintiff had knowledge of the rules and regulations by which the account would be administered. An examination of the record discloses that on April 21, 1988, by an amendment to her response to defendant's fee application, plaintiff alleged that the bank failed to provide depositor with the disclosure statement containing the rules and regulations referred to in the signature card. Defendant's reply to her response attaches a copy of the disclosure statement as an exhibit. The signature card signed by plaintiff acknowledges her receipt of a copy of the rules.

■■ ■ Where required by the specific terms of a written contract expenses and attorney fees are recoverable. (*Qazi v. Ismail* (1977), 50 Ill. App. 3d 271, 273, 364 N.E.2d 595, 597; *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1972), 5 Ill. App. 3d 450, 458, 283 N.E.2d 517, 522.) Where the language of a contract is clear and unambiguous it must be given full effect. (*Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 936, 425 N.E.2d 1354, 1357; *Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480, 481.) An instrument may incorporate another instrument by reference and when incorporated a party to the instrument is charged with notice of all of the facts he could have discovered by diligent inquiry. *Provident Federal Savings & Loan Association v. Realty Centre Ltd.* (1983), 97 Ill. 2d 187, 192-93, 454 N.E.2d 249, 251; *Burns v. Ford Motor Co.* (1974), 29 Ill. App. 3d 585, 590, 331 N.E.2d 325, 330.

■ At the April 8, 1988, hearing no questions were asked of the plaintiff by any of the attorneys participating in the hearing (includ-

ing her own attorney) concerning whether plaintiff did or did not receive the disclosure statement when she opened the account. However, she did testify that she left the bank book, signature card, and "papers" with Szorek upon returning from the bank. The fee petition, response, amended response and reply were all signed by the respective plaintiff and defendant attorneys but were not sworn. Furthermore plaintiff made no statement under oath either in her pleadings or by her testimony regarding whether she had received the disclosure statement. We must therefore accept her signed acknowledgement on the signature card that she received a copy of the rules.

The record also reveals that from 1979 to 1987 plaintiff was employed by Fairfield Savings and Loan Association and while so employed she dealt with customer deposits and accounts on a daily basis. Because of her eight years of bank experience and her familiarity with bank account documents, we find plaintiff's disclaimer of any knowledge that by executing the signature card, she as the depositor agreed to reimburse defendant for attorney fees and litigation costs to be unpersuasive.

We next consider whether defendant acted properly in refusing to pay the account proceeds over to the plaintiff as the surviving joint tenant upon her demand following Szorek's death. A certificate of deposit is a time deposit payable to the account owners upon the expiration of a fixed period of time. Here the account was a one-year certificate of deposit opened on February 6, 1987. In executing the signature card, plaintiff agreed to those terms. Szorek's death occurred six weeks after the account was opened.

While the record is silent as to the exact date following Szorek's death and before August 3, 1987, that plaintiff made a demand for payment of the account proceedings to her as surviving joint tenant, in her complaint filed on August 3, 1987, she alleges a demand and defendant's refusal to pay well before the maturity date of the certificate.

Additionally, plaintiff presented Szorek's death certificate, which contained two items of information different from that on the signature card. The death certificate showed his date of birth to be July 17, 1907, and his residence as 1734 N. Paulina, Chicago, Illinois, whereas the account showed the date of birth as March 15, 1923, and his residence as 3659 N. Spaulding Street, Chicago, Illinois. Plaintiff also acknowledged, and the proof of heirship in the probate proceedings confirms, that she was not Szorek's daughter although the signature card listed her as his daughter. She furnished the erro-

neous information to the bank.

Defendant's rules and regulations provide that in the event of a death of a depositor, withdrawals may be prohibited or restricted until all legal obligations are met. The defendant had the responsibility to require appropriate proof of identity for the decedent when plaintiff made a demand for payment prior to the maturity date of the certificate of deposit.

 █ Where competing claims are made for a fund and where those adverse claims may expose the holder of the fund to double liability, the Illinois Code of Civil Procedure provides for the remedy of interpleader to relieve the stakeholder of the burden and peril of weighing the relative merits of the claims. (Ill. Rev. Stat. 1987, ch. 110, par. 2—409; *Aetna Life Insurance Co. v. Strickland* (1975), 33 Ill. App. 3d 52, 55, 337 N.E.2d 285, 287.) The court had the authority and the responsibility for determining the rights of parties who claim competing interests while the caretaker of the fund does not possess the legal knowledge to evaluate conflicting facts to a binding resolution. (*Aetna*, 33 Ill. App. 3d at 55, 337 N.E.2d at 287.) Faced with the challenge of adverse claims on the funds, defendant had the duty not only to respond to the citation and declaratory judgment actions, but to file a counterclaim in interpleader to resolve the ownership controversy, as it did. Defendant was indifferent as to the success of either plaintiff or administrator and was obligated and willing to pay the money to the one found by the court to be entitled to it; having filed its counterclaim in interpleader, defendant has fulfilled its duty with regard to the funds. *Aetna*, 33 Ill. App. 3d at 56; *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674, 413 N.E.2d 486; *In re Estate of Wilkening* (1982), 109 Ill. App. 3d 934, 441 N.E.2d 158; *Franklin v. Anna National Bank* (1983), 115 Ill. App. 3d 149, 450 N.E.2d 371; *Williams v. Federal Deposit Insurance Co.* (1987), 155 Ill. App. 3d 633, 508 N.E.2d 337.

 We find that the defendant acted responsibly with regard to this account in questioning her right to payment when plaintiff requested payment to her of the entire account balance in advance of the account maturity date and presented a death certificate which failed to conform with identity information given when the account was opened.

The account was inventoried in Szorek's estate on June 12, 1987, and on August 17, 1987, defendant was served with summons in the proceedings for citation to recover assets filed by the estate administrator. On August 7, 1987, defendant was served with summons in plaintiff's declaratory judgment suit, and on September 3, 1987,

defendant filed its counterclaim in interpleader against the administrator in the probate proceedings. Both the citation to recover assets in the estate administration and plaintiff's complaint for declaratory judgment against defendant were filed on August 3, 1987.

Thus, when faced with competing claims for the account funds, defendant had the responsibility to preserve the assets until the court determined an appropriate payee. The defendant responded to both the citation proceedings and the declaratory judgment suit and filed its counterclaim in interpleader for leave to deposit the funds with the court upon determination of the rightful payee. The court consolidated the proceedings and transferred them to the probate court for determination of all questions of law at one time.

This determination was made by the probate judge on April 8, 1988, and defendant thereupon paid the funds over to plaintiff, except for the $3,500 ordered reserved and held pending hearing on defendant's petition for fees and costs.

Nevertheless, plaintiff argues that an award of attorney fees to defendant was not appropriate because defendant was the unsuccessful litigant here. She argues that defendant never had exposure to liability other than the amount of the account proceeds and interest and that defendant was protected from liability to any party other than plaintiff as surviving joint tenant by statutory provision. (Ill. Rev. Stat. 1987, ch. 17, par. 3304—8.) Plaintiff additionally argues that defendant's expenditure of more than 40 hours of legal services was unnecessary and that as the prevailing party any fee award she is required to pay to defendant is unreasonable.

■ Where it is necessary that defendant participate in litigation defending the fund against adverse claims and where the agreement creating the funds expressly authorized attorney fees and costs for such litigation, a reasonable fee award was proper. *Williams*, 155 Ill. App. 3d at 639, 508 N.E.2d at 342; *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983, 518 N.E.2d 424, 429.

The determination of the reasonableness of the fees is left to the sound discretion of the court. (*Kaiser*, 164 Ill. App. 3d at 983, 518 N.E.2d at 429.) The party seeking such fees has the burden of presenting sufficient evidence to enable the court to determine the reasonableness of the fee award. *Kaiser*, 164 Ill. App. 3d at 983, 518 N.E.2d at 429; *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 409, 484 N.E.2d 890, 893.

Plaintiff argues that attorney fees are never awarded to the unsuccessful litigant (*Kolkovich v. Tosolin* (1974), 19 Ill. App. 3d 524,

530, 311 N.E.2d 782, 788) and that in the absence of statute or agreement authorizing them such fees are not allowed to the successful litigant (*Kolkovich*, 19 Ill. App. 3d at 530, 311 N.E.2d at 788).

We find that defendant was neither the successful nor unsuccessful litigant here, but rather merely held funds for the benefit of an appropriate payee. By its agreement with the depositors and by all statutory requirements imposed by the legislature for the defendant's administering of the certificate of deposit funds (Ill. Rev. Stat. 1987, ch. 17, par. 3304—8), defendant was required to pay the funds to the party legally entitled to them, and only after compliance with all legal requirements and resolution of disputed claims.

Here, the defendant properly questioned discrepancies in the identity of Szorek as the account holder when plaintiff produced documentation of his death. When the competing claims of the joint tenant and the administrator of Szorek's estate were made or became known, defendant properly responded by seeking a court determination of the appropriate party entitled to payment of the funds. However, when defendant moved for leave to pay the funds to the clerk of the court and to be excused from further participation in the resolution of the competing claims, plaintiff objected. Plaintiff's resistance to defendant's motion made it necessary that defendant fully participate in all phases of the litigation from August 3, 1987, to April 8, 1988; *i.e.*, eight months of litigation exclusive of the dispute over defendant's attorney fees.

Plaintiff does not dispute the actual number of hours spent or the hourly charge for the legal services rendered. The only dispute is whether the services were necessary, and if they were, whether plaintiff as the successful litigant should pay them.

We find the legal services were necessary and that by the express terms of the signature card agreement and the rules incorporated by reference, plaintiff is obligated to pay these charges. The trial court heard argument of counsel, was familiar with the procedural events that had taken place in this case and had the attorney's affidavit and time sheets to support the request for fees. We find no error or abuse of discretion by the trial judge in determining the amount of the fees and no error in assessing them against the plaintiff.

Defendant seeks an award of its attorney fees and costs incurred in defending this appeal. We find that the language of the written agreement executed by the parties and the rules and regulations incorporated therein which provides that attorney fees and litigation costs shall be charged to the account of the holder applies also

to fees and costs on appeal. For these reasons we find that defendant is entitled to recover its attorney fees and costs in defending this appeal.

For all of the foregoing reasons, the judgment of the trial court is affirmed. This cause is remanded to the trial court for a determination and award to defendant of attorney fees and costs incurred in defending the appeal.

Judgment affirmed. Remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed and cause remanded.

McNAMARA and RAKOWSKI,* JJ., concur.