EDWARD A. WILLIAMS, Plaintiff and Counterdefendant-Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of Tri-State Bank, Defendant-Appellees.

First District (2nd Division)   No. 86—0363

Opinion filed April 28, 1987.

Mitchell, Williams, Holland & Rux, of Chicago (Aldus S. Mitchell, Arnim Johnson, Jr., and William E. Holland, of counsel), for appellant.

Chapman & Cutler, of Chicago (James F. Gebhart, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

This case involves Edward A. Williams' (Williams) claim against the Federal Deposit Insurance Corporation (FDIC) as receiver for the Tri-State Bank (Tri-State) to collect compensation for certain services he allegedly rendered to Tri-State. The FDIC counterclaimed, contending that Williams was indebted to Tri-State pursuant to a promissory note. The trial court granted summary judgment in favor of the FDIC on Williams' claim as well as on the counterclaim and awarded the FDIC its attorney fees. The TSB Corporation (TSB) and Central National Bank (Central) are not parties to this appeal. The only questions presented for review are whether the trial court erred in granting summary judgment in favor of the FDIC as count IV of Williams' amended complaint and on the counterclaim and whether the award of attorney fees was warranted by the evidence. We affirm.

Williams was an officer, director, and shareholder of TSB, an Illinois bank holding company, since its inception in 1974, at which time TSB purchased 91.7% of the common stock of Tri-State. As a result of the acquisition, Williams became a member of Tri-State's board of directors and eventually succeeded to the positions of chairman of the board of directors and acting chief executive, which he held from February 1980 until his resignation in December 1980. The Tri-State purchase was financed by a $1,800,000 loan from Central, made possible by TSB's pledge of the Tri-State stock to Central as collateral. TSB did not have any significant assets other than the Tri-State stock, and TSB financed its loan payments to Central with the dividends from

the stock.

In January 1979, the FDIC issued to Tri-State a proposed "Cease and Desist Order" demanding, among other things, that Tri-State increase its capitalization and cease paying dividends to its shareholders. Tri-State subsequently stopped paying dividends to TSB, which, as noted previously, owned over 90% of the outstanding shares of Tri-State. Without the dividends, TSB was unable to make its payments to Central and consequently defaulted on the loan.

Williams claims that after receiving the proposed cease and desist order, he negotiated with Central to restructure TSB's debt and also sought other investors for additional capital. Williams alleges that in October 1979, he and TSB entered into an oral agreement with Central whereby Central agreed that it would not demand payment on the defaulted loan, but would instead restructure the indebtedness, invest $300,000 in TSB to satisfy the FDIC's requirements, and forebear from selling the pledged bank stock, provided that Williams gained control of TSB and waived collecting any compensation for his services as an employee of Tri-State. Williams maintains that he performed his obligation under the agreement by acquiring rights to 6,700 additional shares of TSB stock, replacing two officers and directors of Tri-State, and waiving receipt of his salary for his services, effective June 1, 1980, and for as long as the debt of TSB to Central remained in default. Williams asserts, however, that Central breached the oral agreement with Williams and TSB on November 26, 1980, by refusing to restructure the debt of TSB and causing the shares of Tri-State pledged to it by TSB to be cancelled and new shares issued directly to Central, thereby giving Central control over Tri-State.

Central also allegedly threatened to sell certain shares of Tri-State stock which Williams had pledged to Tri-State to secure a personal loan. On August 8, 1980, more than three months prior to the date when Central gained control of Tri-State by allegedly breaching the agreement with Williams, Williams made a demand promissory note with Tri-State as payee in the amount of $140,000 for the purpose of restructuring his then existing personal loans. On the face of the note and by attached security documents signed by Williams, Williams pledged a certificate of deposit, two trust accounts in the Evanston Bank, and a savings account as collateral. When Williams did not make any payments on the note, Tri-State, on May 7, 1981, offset $23,166.68 of one of the accounts assigned to it by Williams as security and applied it against accrued interest. On October 7, 1981, Tri-State offset the remaining $3,429.65 of the pledged account against the outstanding principal, thus reducing the principal amount to

$136,570.35.

After Central's alleged breach of the oral agreement, Williams filed a three-count complaint in chancery seeking injunctive and other relief. Williams later amended his complaint to include five counts. Counts I, II, and III of his amended complaint alleged breach of the purported oral contract and fraudulent misrepresentation on the part of defendants Central and Tri-State, and as remedies he requested injunctive relief, specific performance of the contract, and damages. The most important count for the purposes of this appeal is count IV, wherein Williams prayed for relief of $225,000 based vaguely on a theory of *quantum meruit* for services allegedly rendered in his capacity as attorney and accountant on behalf of Tri-State. Count V further alleged that Williams was the owner of certain preferred stock of defendant Tri-State and prayed that Tri-State be directed to redeem those shares of stock held by him. Tri-State counterclaimed to recover the amount due on the above-mentioned promissory note in the principal amount of $136,570.35 and also for all expenses incurred by Tri-State in collecting upon the debt, including reasonable attorney fees. Williams asserted the affirmative defenses of setoff and estoppel to the counterclaim.

On October 8, 1982, the Commissioner of Banks and Trust Companies of the State of Illinois took possession of Tri-State, appointed the FDIC as its receiver, and filed a complaint for dissolution of the bank. The FDIC was subsequently granted leave to be substituted for Tri-State as a party to this action. The FDIC answered Williams' amended complaint, alleging that counts I, II, and III failed to state a cause of action against Tri-State, responding to count IV with the affirmative defense that Williams waived any claim to compensation, and responding to count V with the affirmative defense that Federal law precluded redemption of the stock of a bank in liquidation.

The trial court subsequently granted the FDIC's motion for summary judgment on all counts of plaintiff's amended complaint as well as on the counterclaim previously filed by Tri-State against Williams. The court first found that counts I, II, and III failed to state a cause of action. Concerning count IV, the court stated:

> "FDIC's affirmative defense of waiver to Count IV of plaintiff's amended complaint is taken as true, based upon plaintiff's omission to respond to the defense. Furthermore, the facts presented to the court have proven the affirmative defense. Williams' claim in Count IV for attorney's fees and accountant's fees have been wholly unsupported by any facts."

The court also found for the FDIC on the affirmative defense raised

in response to count V. Regarding the counterclaim, the court ruled that Williams was indebted to the FDIC as receiver for Tri-State in the principal amount of the note to the extent of $136,570.35 plus interest in the amount of $84,146.05. Finally, the court also found Williams liable for Tri-State's attorney fees pursuant to the terms of the promissory note in the amount of $28,206.06. Williams only appeals from: 1) the part of the order sustaining the affirmative defense of waiver pleaded in response to count IV of the amended complaint; 2) the denial of his defenses as a bar to the maintenance of the counterclaim; and 3) the award of attorney fees to the FDIC.

■■ The standard of review in order for a party to prevail upon a motion for summary judgment is well established:

"[A] motion for summary judgment should only be granted if the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. [Citations.] The right of a party to summary judgment must be clear and free from doubt." (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 650, 406 N.E.2d 70.)

In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 456-57, 395 N.E.2d 6.) However, material issues of fact sufficient to preclude summary judgment must be based upon evidence and not merely allegations in a complaint. (*Carruthers v. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) Based on these precepts, we believe that the trial court was correct in granting summary judgment since Williams failed to establish the existence of any genuine issue as to any material fact.

As mentioned earlier, count IV of the plaintiff's amended complaint stated that Williams is a lawyer and certified public accountant and that he performed $225,000 worth of professional services in those capacities for Tri-State for which he was not paid. Williams contends on appeal that there are questions of fact implicit in count IV regarding whether a relationship existed between Williams and Tri-State which gave rise to an implied agreement to compensate Williams for the professional services he allegedly performed, exclusive of his obligations as officer and director of Tri-State. He argues that such an implied contract did arise and that, therefore, he can recover under the theory of *quantum meruit*.

■■ ■ As an affirmative defense to count IV, the FDIC alleged that Williams waived his right to compensation for the professional

services he provided Tri-State, to which allegation Williams did not reply. As previously mentioned, the trial court concluded that the affirmative defense raised by the FDIC was valid based on Williams' failure to respond. The law is clear that allegations asserting an affirmative defense are admitted where no reply is made to them. (*Lundberg v. Gage* (1961), 22 Ill. 2d 249, 251, 174 N.E.2d 845.) *Lundberg* cites section 40(2) of the Civil Practice Act (Ill. Rev. Stat. 1959, ch. 110, par. 40(2)), which has been carried over into the Illinois Code of Civil Procedure, and now provides, together with other relevant portions of the Civil Practice Law, as follows:

"2—602. The first pleading by the defendant shall be designated an answer. If new matter by way of defense is pleaded in the answer, a reply shall be filed by the plaintiff ***.

2—610(a). Every answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates.

2—610(b). Every allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his or her pleading that he or she has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement or want of knowledge, or unless the party has had no opportunity to deny." (Ill. Rev. Stat. 1985, ch. 110, pars. 2—602, 2—610.)

The record clearly indicates that Williams did not reply to the affirmative defense raised by the FDIC. Therefore, as the trial court found, the allegations in the affirmative defense must be accepted as true. Since Williams admitted that he waived compensation for any professional services he may have rendered, there obviously cannot be questions of any genuine issue as to any material fact concerning whether Tri-State and Williams entered into an implied contract for such services.

Turning now to the issue of whether the trial court erred in granting summary judgment for the FDIC on the counterclaim, as mentioned earlier, the counterclaim was filed by Tri-State to recover Williams' indebtedness on a promissory note. Williams has never contested his indebtedness to Tri-State and has not raised any issue on appeal concerning the legitimacy of the debt. Williams' defense to the counterclaim is twofold: 1) Tri-State owed him more for services than he owed under his note, and 2) Tri-State should be estopped from collecting amounts due under the note because of the wrongful conduct of Central Bank in allegedly breaking the agreement to restructure the $1,800,000 loan.

The first of these defenses is essentially one of "setoff" based on the allegations of count IV and V of his amended complaint. Such a setoff, however, depends on this court's finding that Williams was entitled to compensation under count IV of his amended complaint. As discussed earlier, it is clear that the trial court properly entered judgment in favor of FDIC on count IV due to the fact that Williams failed to respond to the FDIC's affirmative defenses.

■ The second defense Williams raises to the counterclaim is estoppel. "A party claiming estoppel *** must establish that he reasonably relied upon the conduct and representations of the party against whom the estoppel is asserted." (*Myers v. Centralia Cartage Co.* (1981), 94 Ill. App. 3d 1139, 1143, 419 N.E.2d 465.) In the case at hand, Williams never alleged or argued in the trial court that any conduct of Tri-State was the basis of the estoppel, but he acknowledged that it was Central's conduct upon which the estoppel is based. It would appear that Tri-State could not be estopped on the basis of Central's conduct, but only because of its own behavior.

■ Williams, however, proposes that Central's conduct can be imputed to Tri-State since estoppels may operate between parties and their privies. It has long been the law in Illinois that "estoppels may operate between parties and their privies, either in blood, in estate, or in law." (*Dill v. Nidman* (1953), 413 Ill. 448, 456, 109 N.E.2d 765.) Nevertheless, Williams failed to present any evidence in the trial court that Tri-State and Central were in privity, or in a "[m]utual or successive relationship to the same rights of property." (Black's Law Dictionary 1079 (5th Ed. 1979).) The fact that Central controlled Tri-State after November 26, 1980, the date when Central allegedly breached the oral contract with Williams, does not mean that Tri-State should be estopped from collecting on the note, especially in light of the fact that Williams was indebted to Tri-State approximately three months prior to the alleged breach. As the trial court properly held: "Williams has neither alleged nor proven that his note to Tri-State Bank was in any way subject to the purported agreement between him and the Central National Bank, or that there was any nexus between the note and the purported agreement." Hence, we believe that the court was justified in granting summary judgment on the counterclaim.

■ Finally, we also find that the award of attorney fees was warranted by the evidence. In a paragraph clearly labeled "Default" on the face of the promissory note on which Tri-State counterclaimed, it was stated that "[d]ebtor is obligated to pay court costs and reasonable attorney fees incurred by the Holder in the collection or enforce-

ment of the debt after default." Moreover, the back of the note stated that "[e]ach of the undersigned agrees to pay all costs of collection, legal expenses, and reasonable attorney's fees incurred or paid by the legal Holder in collecting this Note after the occurrence of an Event or Default."

■■ Williams first asserts that the award of $28,206.06 was unreasonable because the FDIC was entitled to recover fees only for the prosecution of its counterclaim and not for the defense of Williams' claims against Tri-State. However, the record indicates that all of Williams' claims against Tri-State had been asserted by him as an affirmative defense to the counterclaim in the nature of a setoff. In order to prosecute the counterclaim, it was necessary for the FDIC to dispose of Williams' affirmative defenses. Hence, the FDIC's efforts to defeat the setoff defense was a necessary and integral part of collecting on the promissory note. Moreover, Williams cannot complain that the FDIC's petition for fees is somewhat deficient. The record amply demonstrates that the affidavit submitted by counsel for FDIC is as comprehensive and detailed a record of attorney's services as can be expected. "The test of whether a fee award is excessive is whether there has been a clear abuse of discretion." (*Heckmann v. Hospital Service Corp.* (1982), 104 Ill. App. 3d 728, 732, 432 N.E.2d 891.) Unless the trial court's discretion was clearly abused, the allowance of fees will not be disturbed. (*La Salle National Bank v. Brodsky* (1964), 51 Ill. App. 2d 260, 267, 201 N.E.2d 208.) We do not believe that the trial judge abused his discretion as to this issue.

Williams also complains that the award of fees was unfair because the trial court did not conduct a proper hearing on the FDIC's request for fees and that there was never a prove-up of the fees incurred. This argument is belied by the record, which clearly indicates that Williams did indeed present his objections to the request for fees at a hearing before the trial judge on January 9, 1986. The judge considered Williams' oral objections, as well as the FDIC's affidavit for fees together with Williams' written response thereto, and appropriately awarded fees that he believed in his discretion were warranted. We perceive no error.

Accordingly, we affirm the trial court.

Affirmed.

BILANDIC and STAMOS, JJ., concur.