CHRIST DEMOS, Plaintiff-Appellant and Cross-Appellee, v. NATIONAL BANK OF GREECE, Defendant-Appellee and Cross-Appellant.—CHRIST DEMOS *et al.*, Plaintiffs-Appellants, v. NATIONAL BANK OF GREECE, Defendant-Appellee.

First District (5th Division)   Nos. 1—88—2509, 1—89—1256 cons.

Opinion filed February 8, 1991.

Daniel C. Meenan, Jr., and Georgia A. Kolettis, both of Feiwell, Galper & Lasky, Ltd., of Chicago, for appellants.

Arvey, Hodes, Costello & Burman and Bishop, Callas & Wagner, both of Chicago (Lawrence C. Rubin and Frank P. Tighe III, of counsel), for appellee.

JUSTICE COCCIA delivered the opinion of the court:

These consolidated appeals arise from various disputes between the National Bank of Greece, S.A., on the one hand, and Christ Demos and Louis Demos, on the other hand. In case number 1—88—2509, the Demoses appeal from the circuit court's entry of summary judgment in favor of the bank on their claim that it breached an oral agreement to loan them money. In case number 1—89—1256, Christ Demos appeals from the circuit court's award of attorney fees and costs in favor of the bank in an action it brought to enforce his obligations under a promissory note and a guaranty; the bank has cross-appealed regarding the award of fees. The bank also joined in 1—89—1256, after the circuit court granted Christ Demos' petition to reopen the judgment concerning the guaranty. We shall discuss these appeals separately.

### No. 1—88—2509

The Demoses filed their third amended complaint at law on October 13, 1985, naming the bank as defendant. The Demoses alleged, generally, that they were engaged in the business of owning and operating restaurants in the Chicago area and that the bank was a foreign banking association with a branch operation located in Chicago. They became customers of the bank in 1977, at the request of its branch manager, George Kostis, and transferred all of their banking business to it. In September of 1979, the Demoses further alleged, Kostis represented that the bank would loan them $800,000 in two installments, to be funded at their request. The first installment, in the amount of $200,000, was to be used in constructing a restaurant in Chicago. The loan was to be made at the "prevailing" interest rate at the time the Demoses requested the proceeds, they alleged. By letter dated September 5, 1985, Kostis confirmed that the bank would loan them $200,000 at 12% interest. The Demoses received the loan proceeds

two months later. In November of 1979, Charalombys Zarakiotis replaced Kostis as branch manager. According to the Demoses, both Kostis and Zarakiotis represented that the second installment would be forthcoming. The second installment (also intended for constructing a restaurant) was not forthcoming, however, notwithstanding the demands of the Demoses. By May of 1981, the Demoses alleged, they could no longer afford to delay and obtained substitute financing from the Wheeling Trust & Savings Bank.

In count I of their third amended complaint, sounding in breach of contract, the Demoses went on to allege that Wheeling was able to extract from them loan terms more costly (including a higher interest rate) than those prevailing at the time they received the assurances from the bank. As a result, they were required to pay an additional $75,000 in interest to Wheeling. Count II sounded in estoppel. The Demoses alleged that they relied to their detriment on the bank's oral loan commitment. In addition, they claimed, they were damaged because the bank's misrepresentations induced them to delay from going elsewhere for the loan. The Demoses also claimed that they were damaged by the bank's unreasonable conduct in refusing to grant Wheeling a subordinate position in collateral, which required them to borrow a larger amount from Wheeling in order to pay in full their loan obligations to the bank so that it would release their collateral to Wheeling, thereby securing the latter's loan to them.

After the bank answered the third amended complaint, it moved for summary judgment pursuant to section 2–1005 of the Illinois Code of Civil Procedure. (See Ill. Rev. Stat. 1987, ch. 110, par. 2–1005.) The bank also submitted a memorandum in support of its motion, along with several exhibits. The bank's principal argument was that, as a matter of law, no enforceable contract to lend $600,000 was ever formed. A copy of the bank's commitment letter regarding the $200,000 was attached as an exhibit. This letter makes no mention of the alleged second installment of $600,000. The bank also relied on the discovery deposition testimony of Christ Demos. According to the bank, his testimony disclosed that no agreement was ever reached concerning the interest which was to be charged on the $600,000. At various points in his testimony, Christ stated the interest rate would be negotiated, would be fair, would be prime rate, would be "one over prime," or that Kostis would be free to set the interest rate. Christ also testified that when Kostis issued the commitment letter regarding the $200,000, he asked the bank for a written commitment regarding the $600,000. But Christ stated that Kostis would not give

him a written commitment, because the second installment was "too far away."

In response to the bank's motion for summary judgment, the Demoses submitted, among other things, the affidavit of Christ Demos. Christ affirmed that in September of 1979, the bank through Kostis made an oral commitment to loan them $800,000, to be paid in two installments of $200,000 and $600,000. Christ went on to affirm:

> "The agreed rate of interest on the loan was to be the prime rate at the time I requested the proceeds. I requested both installments, the first in approximately September, 1979, and the second, shortly thereafter. The prime rate in September, 1979 was approximately 12%. Since I demanded that the $600,000.00 installment be funded in late 1979, it is my contention that the interest rate on the second installment should also have been 12% [the prime rate at the time]."

The bank then moved to strike Christ's affidavit, contending that it contradicted his prior, sworn deposition testimony. On August 10, 1988, the circuit court granted the bank's motion for summary judgment and entered judgment in its favor on both counts of the third amended complaint. Subsequently, the Demoses appealed.

In this court, the Demoses argue that the circuit court erred in entering summary judgment against them on their breach of contract and promissory estoppel claims. The bank responds that the circuit court did not abuse its discretion in entering summary judgment. It is the bank's principal theory on review, as below, that the alleged oral agreement is unenforceable because of its indefiniteness.

■ Before turning to the merits of the case, we must consider the appropriate standard of review. The bank cites *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201, *Neumann v. Gloria Marshall Figure Salon* (1986), 149 Ill. App. 3d 824, 500 N.E.2d 1011, *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 493 N.E.2d 372, and *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549, in support of its assertion that we should apply the abuse of discretion standard. *Fearon*, however, was an appeal from unsuccessful motions to vacate summary judgments, filed more than one year after those judgments were entered. In such cases, where the losing party seeks to vacate a judgment long after its entry, the abuse of discretion standard is proper. But when an appellate court is faced with an appeal involving only the propriety of summary judgment, the *de novo* standard of review should be applied—the appellate court, like the trial court, determines whether there is a genuine issue of material

fact. (See generally Smith and Simko, *Principles of Appellate Review: A Lack of Consensus in Illinois Courts*, 3 Appellate Law Review 62, 73-74 (1990); see also R. Michael, 4 Illinois Practice: Civil Procedure Before Trial §38.5, at 233 (1989) (usual deference reviewing court grants order of trial court is not applicable to order granting summary judgment, to ensure that nonmovant's right to trial by jury has not been unjustly lost).) Therefore, we must respectfully disagree with those courts that have applied the abuse of discretion standard in reviewing summary judgment orders.

■ While we reject the bank's argument regarding the proper standard of review, we agree that Christ Demos cannot be allowed to contradict his prior, sworn deposition testimony via an affidavit. In *Commonwealth Eastern Mortgage Co. v. Williams* (1987), 163 Ill. App. 3d 103, 516 N.E.2d 515, appellant filed an affidavit after appellee moved for summary judgment, in an attempt to supply terms for an alleged oral agreement which he was unable to supply at his discovery deposition. The appellate court stated that it would not consider the affidavit in reviewing the entry of summary judgment against him. The court relied on the rule that a nonmovant cannot use an affidavit to contradict prior deposition testimony and place material facts in issue. The reviewing court identified the judicial policy behind the rule: once parties have given sworn testimony, they should not be encouraged to commit perjury by changing their prior testimony so as to avoid its consequences. (See *Williams*, 163 Ill. App. 3d at 108-10, 516 N.E.2d at 518-19.) Following *Williams*, we shall not consider Christ's affidavit in reviewing the circuit court's entry of summary judgment against the Demoses.

We now turn to the merits of the summary judgment order. *McErlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 414 N.E.2d 128, is a leading Illinois case regarding the enforceability of oral agreements to lend money. Plaintiff in *McErlean* appealed from, among other things, the circuit court's dismissal of his claim against defendant bank for breach of an oral contract to extend a line of credit up to $100,000. The appellate court affirmed, concluding that the amended complaint failed to allege a loan commitment sufficiently definite to constitute an enforceable agreement. Plaintiff neither pleaded the existence of a document purporting to be a contract to lend him $100,000, nor did he attach such a document to his amended complaint. And he failed to plead the essential terms of a contract to lend money in the future. The reviewing court defined those terms as follows:

"These terms would include, for example, the intended duration of the line of credit; the applicable rate of interest to be charged for any loan emanating from such an agreement, or the basis for how such interest would be ascertained; what duration or date or dates were contemplated for maturity of such loans; and what mode or rate of repayment was contemplated, *i.e.*, whether the entire amount would be repayable or if repayment in installments would be acceptable. [Citation.]" (*McErlean*, 90 Ill. App. 3d at 1146, 414 N.E.2d at 132.)

After reviewing the relevant authorities, the court concluded that the specification of the interest rate to be charged is a significant element, if not the *sine qua non*, of a contract to loan money. Because plaintiff expressly pleaded no allegations (and none could be implied) as to interest, duration, and terms of repayment, the court found no error in the dismissal of the amended complaint insofar as it purported to plead an oral, or partially written and partially oral, contract to loan money in the future. See *McErlean*, 90 Ill. App. 3d at 1146-47, 414 N.E.2d at 132-33; see also *Champaign National Bank v. Landers Seed Co.* (1988), 165 Ill. App. 3d 1090, 519 N.E.2d 957 (oral contract to lend money in future cannot exist as matter of law where no cost of money terms are included in alleged agreement).

■■ In light of *McErlean*, the bank was entitled to summary judgment on count I of the third amended complaint. The principal infirmity regarding the alleged $600,000 installment—although it is by no means the sole infirmity—is the indefiniteness of the interest rate. The Demoses claimed in their third amended complaint that the bank orally agreed to charge them the "prevailing" rate. In his discovery deposition, Christ Demos could not specify whether the interest rate would be negotiable, "fair," prime, 1% over prime, or whether the bank would be free to set the rate. This indefiniteness, regarding an essential element of an oral contract to lend money in the future, renders it unenforceable as a matter of law. The Demoses rely on *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 491 N.E.2d 795, and *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 490 N.E.2d 972, to support their claim that the contract was not indefinite. In *Wait*, however, plaintiff's amended complaint included specific allegations as to how the interest rate was to be computed; in *Carrico*, similarly, it was clear that the bank was to set the interest rate. Yet in our case the Demoses themselves are unclear about who would set the rate or what standard would be used in determining it.

■ Because the alleged oral contract is so indefinite as to be unenforceable, the doctrine of promissory estoppel, which the Demoses

invoked in count II of their third amended complaint, is inapplicable as a matter of law. Before the doctrine applies, there must be a promise. (See *First National Bank v. Sylvester* (1990), 196 Ill. App. 3d 902, 911, 554 N.E.2d 1063, 1070.) Moreover, the doctrine does not apply where the reliance of the parties who seek to invoke it was not reasonable or justifiable. (See *S.N. Nielsen Co. v. National Heat & Power Co.* (1975), 32 Ill. App. 3d 941, 944, 337 N.E.2d 387, 389.) In this case, reliance on the bank by the Demoses was neither reasonable nor justifiable. Their $200,000 transaction with the bank was reduced to writing by commitment letter and promissory note. Furthermore, Christ Demos himself testified that even though he requested a written commitment regarding the $600,000—as he received for the smaller amount of $200,000—the bank refused to acquiesce. Given these facts, to the extent that the Demoses may have relied on the bank, their reliance was unreasonable and unjustifiable as a matter of law.

Consequently, we are of the opinion that the circuit court did not err in entering summary judgment in favor of the bank on counts I and II of the third amended complaint.

No. 1—89—1256

Louis Demos is not involved in this appeal, in which Christ Demos requests that we review an allegedly excessive award of attorney fees and costs to the bank. The bank obtained the award after successfully prosecuting its action to enforce Christ's obligations under his promissory note, as well as a guaranty of a second promissory note. The bank has cross-appealed, claiming that the fee award was insufficient. Subsequently, the bank joined in this appeal, after the circuit court granted Christ's petition to vacate that portion of the judgment regarding the guaranty.

This case began when the bank filed a complaint in the municipal department of the circuit court on March 22, 1982. The bank alleged that George and Vasiliki Petropoulos made and delivered a promissory note on March 15, 1979. That same day, the bank further alleged, Christ Demos executed a separate, unlimited personal guaranty in favor of the bank. The makers defaulted in their payments on the note, and the bank demanded that Christ remit the unpaid balance. Despite these demands, Christ refused to pay. Accordingly, the bank requested judgment in the amount of $9,769 in principal and interest, along with attorney fees and costs.

Christ answered the bank's complaint on April 20, 1982, denying that he was obligated to it. He also raised several affirmative de-

fenses. In his fourth affirmative defense, Christ alleged that even if he was obligated under the guaranty, any amounts owed by him to the bank were offset by amounts which were the subject of his cause of action in the oral loan commitment case, which we discussed above and which he filed in the law division on March 31, 1982.

Subsequently, the bank filed an amended complaint, alleging that Christ made and delivered his own promissory note on January 11, 1982, in the sum of $22,000. The bank further alleged that the note matured on April 12, 1982, and that Christ refused to pay any part of it. Consequently, the bank prayed for $23,691.55 in principal and interest, along with attorney fees and costs.

Christ answered the bank's amended complaint on October 26, 1982, denying that any money was due on the subject note. Again, as an affirmative defense, he alleged that the bank was not entitled to recover any money from him on the note because it owed him substantially in excess of that amount as a result of their prior business relationship, as was more fully alleged in his law division case based on the alleged oral loan commitment.

The law and municipal cases were subsequently consolidated in the law division. The bank—having obtained summary judgment against the Demoses on counts I and II of their third amended complaint on August 2, 1988—moved for summary judgment regarding its claim on September 12, 1988. Because Christ raised his claim against the bank as a defense to its claim, and because it subsequently prevailed on his claim, the bank argued that it was entitled to judgment as a matter of law. In its supporting memorandum, the bank prayed for judgment in the amount of $106,414.63. Among other things, the bank requested $50,000 in attorney fees and expenses, including the fees it incurred in defending the oral loan commitment case filed by the Demoses.

On December 12, 1988, the circuit court entered judgment in the bank's favor for the unpaid principal balance on the note and guaranty in the amount of $29,533.67. The court continued the hearing on the issues regarding interest and attorney fees. On January 17, 1989, the circuit court entered an order confirming the award of $29,533.67 to the bank. The court further ordered that judgment be entered in the amount of $26,860.96 for interest on the note and guaranty. The court denied the bank's motion for attorney fees in connection with its defense of the oral loan commitment claim, but granted the bank leave to file an amended petition for attorney fees. The next day the bank filed its supplemental petition for attorney fees. The bank requested $9,257.50 in fees and $223.20 in costs for prosecution of both

its claim on Christ's note as well as its claim on the note he guaranteed.

On April 12, 1989, following a hearing, the circuit court awarded the bank $6,612.50 in attorney fees and $223.20 in costs. The order does not distinguish between the fees and costs awarded regarding Christ's own note, on the one hand, and the note he guaranteed, on the other hand. Christ filed his notice of appeal on May 11, 1989; the bank filed its notice of cross-appeal on May 12, 1989.

On September 8, 1989, Christ filed his section 2—1401 petition to partially open judgment. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) This petition concerned only the guaranty he executed on behalf of the makers of the $10,000 promissory note, the Petropouloses. Christ alleged that on the date of judgment, the balance due on the guaranty was $10,804.86 ($7,533.67 in principal and $3,271.19 in interest). He further alleged that the bank, in an affidavit submitted along with its motion for summary judgment (executed by its co-manager Vasilios Skouras), failed to disclose that it had settled with Vasiliki Petropoulos. In addition, he went on to allege that the bank falsely stated in the affidavit that its previous judgment against the makers, which it obtained on May 26, 1981, remained unsatisfied. Attached to Christ's petition was a copy of a letter from the bank's attorney (George Marinakis) to the attorney for Vasiliki Petropoulos, dated March 14, 1983 ("settlement letter"), stating that it would settle the indebtedness and agree not to sue her if she paid $1,000 in installments of $50 per month commencing April 1, 1983. As evidenced by the bank's ledger sheets, which it submitted in support of its motion for summary judgment, $1,000 was paid to it at $50 per month commencing April 8, 1983, and concluding with a final payment of $100 on October 2, 1984. However, the ledger sheets did not reflect that these payments were made pursuant to a settlement. Because his rights of subrogation were prejudiced by this settlement, Christ claimed that he was entitled to be discharged from liability as guarantor. On account of the bank's erroneous affidavit and its failure to disclose the settlement at the time of entry of judgment on January 17, 1989, these facts were unknown to Christ, he alleged. Christ averred that he did not discover these facts until he paid the judgment and then sued Vasiliki Petropoulos to recover the $10,804.86 he paid on her behalf: on August 22, 1989, her attorney presented a motion to dismiss his suit, on the basis of the settlement with the bank; in support of her motion, a copy of the bank's settlement letter was attached. Accordingly, Christ prayed that the portion of the judgment concerning the guaranty be opened up and set aside, so that he could

assert a defense which would have prevented rendition of that portion of the judgment.

On November 28, 1989, the bank moved to dismiss Christ's petition for post-judgment relief, pursuant to section 2—615 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) The bank argued that his petition was insufficient as a matter of law, for he had not submitted an affidavit in support of the petition showing that he did not know of the settlement letter when judgment was entered, the settlement letter created no defense, and he had not exercised diligence. In reply to the bank's motion Christ argued that he did have a defense. He also submitted an affidavit, affirming that he had no knowledge of either the settlement or the letter memorializing it until August of 1989, when his current counsel showed him the settlement letter. And Christ submitted the affidavit of Daniel J. Meehan, Jr., who defended him in the bank's action on the note and guaranty. Meehan affirmed that the bank never disclosed the settlement letter to him, and that he had no knowledge of it until the attorney representing Christ in the section 2—1401 action gave him a copy.

On January 8, 1990, the circuit court denied the bank's motion and directed it to answer Christ's petition. The bank answered the petition on March 13, 1990. The bank denied, among other things, that the Skouras affidavit was false, and it asserted that—even if it had known of the settlement letter—it was not under an affirmative obligation to disclose the letter to Christ absent a specific discovery request. The bank submitted four affidavits along with its answer. Frank P. Tighe III, who represented the bank in its action against Christ and defended it in the loan commitment action of the Demoses, affirmed that he had no knowledge of the settlement letter until reading Christ's petition for post-judgment relief. Lawrence C. Rubin, who also represented the bank in its action and defended it in the loan commitment action, affirmed that he had no knowledge of the settlement letter until reading the section 2—1401 petition. Attorney Perry G. Callas affirmed that he represented the bank in its action against Christ on the guaranty; Marinakis represented the bank in its action against the Petropouloses, and he obtained a judgment against them on May 26, 1981; Callas filed the guaranty action against Christ on March 22, 1982; Callas responded to Meehan's interrogatories and production requests in that action, but neither Marinakis nor the bank informed him of settlement negotiations or Marinakis' settlement letter; at the depositions of the bank's officers, including Skouras, Christ's attorneys did not inquire about the settlement and they propounded no additional or supplemental discovery; and, finally, Callas

affirmed, he had no knowledge of the settlement letter until reading Christ's section 2—1401 petition. In his affidavit, Skouras affirmed that no one at the Chicago branch informed him of the settlement, that he had no knowledge of the settlement when he executed his earlier affidavit, and that he never discussed the Petropoulos loan with Marinakis.

On March 14, 1990, the circuit court entered an order stating that the summary judgment regarding Christ's guaranty was vacated and set aside, including the award of attorney fees to the bank applicable thereto. The court returned the case to the trial call for trial on the guaranty. In addition, *sua sponte*, the court directed that a hearing would be set to determine whether sanctions should be imposed on the bank for withholding the settlement letter. On March 30, 1990, the bank filed its notice of appeal (see 107 Ill. 2d R. 304(b)(3)), and it sought to join in Christ's appeal number 1—89—1256, which arose from the same case. On April 18, 1990, the circuit court granted the bank's motion to stay the proceedings pending appeal, on condition that it post a $15,000 appeal bond. After oral argument in appeal number 1—88—2509, we consolidated it with appeal number 1—89—1256.

■ Because resolution of the attorney fees issue depends on resolution of the section 2—1401 issue, we shall consider the latter issue first. This court has noted that a section 2—1401 petition invokes the equitable power of the trial court, when the exercise of such power is necessary to prevent injustice. (See *Leavens, Armiros & Ross, Ltd. v. English* (1990), 203 Ill. App. 3d 16, 19, 560 N.E.2d 1031, 1034.) Two elements must be alleged in such a petition: first, the petitioner must have a meritorious defense; second, the entry of judgment must not have been the result of the petitioner's lack of diligence. The decision to vacate rests within the sound discretion of the circuit court and will not be reversed on review unless that court abused its discretion. See *Leavens, Armiros & Ross*, 203 Ill. App. 3d at 20, 560 N.E.2d at 1034.

■ Taking the second element first, we cannot say that the circuit court abused its discretion in ruling that Christ exercised due diligence. Although the bank denies concealing the settlement letter, we need not go so far as to hold that it concealed the letter in order to affirm the circuit court. But it is clear that the discovery propounded by Christ was drafted broadly enough to call for production of the letter. We agree with Christ that if, as the bank professes in the four affidavits it submitted (executed by one of its officers and three of its attorneys from two different law firms), it was ignorant of the settle-

ment letter, how can he be charged with a lack of diligence in failing to discover the letter before the entry of judgment against him on the guaranty? In addition, the consequences of accepting the bank's argument—that, notwithstanding Christ's interrogatories and production request, it was under no affirmative duty to produce the letter even if it knew of its existence—would be intolerable, for they would have the effect of encouraging parties to conceal evidence during discovery.

Similarly, we cannot say that the circuit court abused its discretion in ruling that Christ had a meritorious defense to the bank's claim on the guaranty. In this court, as below, he relies on *Trotter v. Strong* (1872), 63 Ill. 272. In that case, Trotter was given a promissory note by Graves and Roberts, the principal debtors, with Strong and Chappell acting as sureties. Subsequently, Trotter entered into an agreement with Roberts, providing that if Roberts gave him $500, he would never collect any further portion of the $2,039.58 judgment on the note from him. Strong was not given notice of this agreement, and he neither consented to nor ratified it. In the litigation which followed, Strong's theory was that he was released from further liability. Trotter, although he admitted the existence of the agreement not to enforce the judgment with Roberts, denied that he had released the others. The circuit court ruled for Strong, and Trotter appealed. The supreme court of Illinois affirmed, reasoning:

> "When a creditor receives part of the claim from the principal debtor, under such circumstances as would constitute a satisfaction of his liability, the surety must be discharged. In such a case, the debt is satisfied, and the surety can not [*sic*] be liable for the payment of a debt that is discharged. If he were held liable, he could not recover over against the principal, because he is discharged from the debt and owes the creditor nothing, and the surety could not recover for money paid to the use of the principal, as he owes nothing, and when the surety makes the payment it can not [*sic*] be for the use of the principal debtor. To enforce payment from the surety under such circumstances, would be to deprive him of his legal right to be reimbursed for the money thus paid. It would change the relations of principal and surety, deprive the latter of a legal right, and would operate unjustly. When the creditor, therefore, without the assent of the surety, discharges the principal debtor, it must follow that the surety can no longer be held liable. His liability can not [*sic*] survive that of his principal, unless it be by his own agreement." (*Trotter*, 63 Ill. at 274.)

The parties agree that *Trotter* is still the law in this State.

The bank, however, relies on *Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 393 N.E.2d 1146, to support its contention that Christ has not established a meritorious defense. The appellate court in *Pate* stated that a release extinguishes a cause of action, but a covenant not to sue affects only the right to bring suit and not the cause of action itself. (See *Pate*, 175 Ill. App. 3d at 236-37, 393 N.E.2d at 1149.) The bank concludes that because the settlement letter was a covenant not to sue rather than a release, Christ's liability was not discharged by it. Yet it must be remembered that framing the analysis in terms of whether an instrument is a release or a covenant not to sue can distort the real issue, which is to determine the intent of the parties to the agreement. (See *Brady v. Prairie Material Sales, Inc.* (1989), 190 Ill. App. 3d 571, 575, 546 N.E.2d 802, 804.) We think Christ has made a sufficient showing, for the purposes of a section 2—1401 petition, that he has a meritorious defense to the guaranty claim. That is, in the language of *Trotter*, Christ has demonstrated that it would be unjust for the bank not to discharge him as surety, when it intended to discharge Vasiliki Petropoulos as a principal debtor. Equity requires that he be given the opportunity to litigate this defense on remand, as he would have if the bank had disclosed the settlement letter during discovery.

■■ Finally, we come to the matter of the attorney fees awarded by the circuit court. We have reviewed the record, including pleadings, the transcripts of the hearings held below, and the orders appealed from. These materials do not reveal what portion of the award is attributable to Christ's own promissory note, on the one hand, and the note he guaranteed, on the other hand. Therefore, given the state of the record, we cannot determine whether the bank was awarded too much or too little on Christ's promissory note. We have affirmed the circuit court's finding that the bank is not entitled to fees regarding the guaranty; consequently, we must remand the cause for a hearing on the question of what fees the bank is entitled to regarding Christ's note. Still remaining, however, is the issue of whether the bank was entitled to fees for its defense of the loan commitment case of the Demoses, which Christ raised as an affirmative defense in its action against him on the note.

The bank cites *Williams v. Federal Deposit Insurance Corp.* (1987), 155 Ill. App. 3d 633, 508 N.E.2d 337, to bolster its contention that it is entitled to attorney fees for its defense of the loan commitment case. Plaintiff in *Williams* filed a claim against the FDIC, as receiver of a bank, to collect compensation for certain services he rendered to the bank pursuant to an oral contract. The FDIC

counterclaimed, contending that plaintiff was indebted to the bank pursuant to a promissory note. The circuit court granted summary judgment in the FDIC's favor on plaintiff's claim and the counterclaim and awarded the FDIC attorney fees. Plaintiff appealed, and the appellate court affirmed. That court, reviewing the facts of the case before it, noted that plaintiff executed a promissory note with the bank for the purpose of restructuring his personal loans. After the oral agreement was allegedly breached, plaintiff filed an action in chancery against the bank, asserting causes of action sounding in breach of oral contract, fraudulent misrepresentation, *quantum meruit*, and injunctive relief. The bank counterclaimed to recover the principal amount of the promissory note, as well as reasonable attorney fees. Plaintiff asserted the affirmative defense of setoff to the counterclaim. The FDIC was subsequently granted leave to substitute for the bank as a party.

After concluding that the circuit court was justified in granting summary judgment on the counterclaim, the appellate court went on to hold that the award of attorney fees was warranted by the evidence. The reviewing court rejected plaintiff's claim that the FDIC was entitled to recover fees only for the prosecution of its counterclaim and not for the defense of his claims against the bank. The court reasoned that plaintiff's claims against the bank had been asserted by him as an affirmative defense to the counterclaim in the nature of a setoff. In order to prosecute the counterclaim, it was necessary for the FDIC to dispose of plaintiff's affirmative defenses; hence, the FDIC's effort to defeat the setoff defense was a necessary and integral part of collecting on the promissory note. See *FDIC*, 155 Ill. App. 3d at 640, 508 N.E.2d at 342.

In view of *FDIC*, we are bound to conclude that the bank was entitled to reasonable attorney fees for defending the oral loan commitment claim brought by the Demoses. As noted above, they commenced that claim against the bank after it commenced its claim against Christ. Subsequently, Christ answered the bank's complaint, raising the loan commitment case in the form of the affirmative defense of setoff. Like the FDIC, it was necessary for the bank to dispose of Christ's affirmative defense of setoff; prevailing on the loan commitment case was an integral part of prevailing on the promissory note. In his reply brief on the fees issue, Christ relies on *Verni v. Imperial Manor of Oak Park Condominium, Inc.* (1981), 99 Ill. App. 3d 1062, 425 N.E.2d 1344, but that case involved neither an affirmative defense nor a setoff. Christ also attempts to distinguish *Williams* from our case on the grounds that it was not necessary for the bank

to prevail in the loan commitment case in order to prevail in the note case. He argues that his "set-off defense was improper and legally deficient because it prayed for an unliquidated sum" and that "[t]he trial court properly recognized the illegitimate nature of the affirmative defense." But under the doctrine of judicial estoppel, Christ is not permitted to assume one position in the trial court, succeed in that position, and then assume a second, contrary position in this court. (See *Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 983, 483 N.E.2d 924, 935) (purposes of the doctrine of judicial estoppel are to promote the truth and to prevent parties from deliberately shifting positions to suit exigencies of the moment).) If Christ believed, as he now appears to, that the affirmative defense of setoff was meritless, he never should have raised it, or he should have at least withdrawn it; instead, by his actions, he required the bank to incur attorney fees in rebuffing it. On remand, then, the circuit court must also award the bank reasonable attorney fees for defending the oral loan commitment claim brought by the Demoses, which Christ raised as an affirmative defense.

In summary, we affirm the circuit court's entry of summary judgment in the bank's favor on counts I and II of the oral loan commitment action filed by Louis and Christ Demos; we affirm the court's decision to vacate that portion of the judgment obtained by the bank which was attributable to the guaranty in its action against Christ Demos; we reverse that portion of the court's judgment denying the bank attorney fees for litigating Christ's affirmative defense of setoff; and we remand for a hearing on the issue of attorney fees, regarding the affirmative defense as well as Christ's promissory note.

Affirmed in part; reversed in part and remanded with directions.

MURRAY and GORDON, JJ., concur.