LEODAN GONZALEZ, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—92—0108

Opinion filed March 24, 1993.

INGLIS, P.J., dissenting.

Albert J. Salvi and David H. Harris, Jr., both of Albert J. Salvi & Associates, of Waukegan, for appellant.

Glen E. Amundsen, Mary T. Nagel, and Michael Resis, all of Querrey & Harrow, Ltd., of Waukegan, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Leodan Gonzalez, appeals from an order of the circuit court of Lake County granting summary judgment for defendant, State Farm Mutual Automobile Insurance Company (State Farm), in

plaintiff's declaratory judgment action. The declaratory judgment action was filed alleging that defendant issued plaintiff's' parents a policy which afforded plaintiff uninsured motorist coverage for the injuries he suffered while a passenger on a dirt bike. On appeal, plaintiff contends that (1) the dirt bike can be licensed for public road use and thus should be covered by the uninsured motorist clause in the policy, and (2) defendant has not met the burden to deny coverage. We reverse.

On June 11, 1989, plaintiff was a passenger on the backseat of a KX 125 Kawasaki dirt bike. Fifteen-year-old David Dolinar operated the dirt bike in a field behind Hawthorne Mall in Vernon Hills. As they were riding, the front wheel of the bike came off the ground, plaintiff fell from the dirt bike, and was injured.

Plaintiff attempted to obtain coverage under Dolinar's parents' homeowner and auto liability policies, but the insurer, State Farm, denied coverage. Since David Dolinar did not have a driver's license, plaintiff attempted to obtain coverage under his own parents' uninsured motorist coverage. Plaintiff brought this declaratory judgment action alleging that defendant issued his parents, Maria Quesada and Leonel Gonzalez, policy No. 919 6037-B02-13, which provided plaintiff uninsured motorist coverage for the injuries he suffered while a passenger on the dirt bike. State Farm answered the complaint by denying that plaintiff was entitled to such coverage.

Policy No. 919 6037-B02-13 contains the following exclusion under its uninsured motorist coverage section:

"UNINSURED MOTOR VEHICLE—COVERAGE U
* * *

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.
* * *

An *uninsured motor vehicle* does not include a land motor vehicle:
* * *

2. designed for use mainly off public roads, and not able to be licensed for public road use. This does not apply while the vehicle is on public roads." (Emphasis in original.)

State Farm subsequently moved for summary judgment. In support of its motion, State Farm offered the deposition testimony of David Dolinar. Dolinar testified that on the date of June 11, 1989, he

was driving a 1985 KX 125 Kawasaki dirt bike. At the time, he did not have an Illinois driver's license. On the day of the accident, the KX 125 Kawasaki dirt bike was not licensed for use on the public roads. Dolinar neither applied for a license nor intended to do so. He did not ride the dirt bike on public roads. To get to the site where he rode it off road, he pushed the bike along the street, and then drove it along a bike path.

Dolinar presented testimony to the effect that the engine on the dirt bike was two stroke, which made it unsuitable for road use, and that it would overheat or explode if driven at a constant 30-mile-per-hour speed. In order to make the bike "street legal," and thus able to be licensed, he said he would have to replace the suspension, the tires, and add all necessary safety features such as headlights, turn signals, a turn signal lamp, brake lights, a license bracket for holding a vehicle license, and foot pegs. In essence, he concluded, he would have to rebuild the entire vehicle.

Plaintiff responded to the motion for summary judgment and offered the affidavit of Frank Blazevich in support of his response. Blazevich's affidavit stated that he had been selling Harley Davidson motorcycles for 25 years in Waukegan. It declared that the KX 125 Kawasaki dirt bike was an off-road vehicle "which *can* be with minor modifications driven on public roads, but *cannot* be driven on highways." (Emphasis in original.)

After the parties deposed Frank Blazevich, State Farm filed its reply to plaintiff's response. It offered the deposition testimony of Frank Blazevich and a copy of the certificate of origin for David Dolinar's KX 125 Kawasaki dirt bike in support of its motion for summary judgment. The certificate of origin provides that the manufacturer built the dirt bike in question for off-highway use in sanctioned closed-course racing events.

During his deposition, Mr. Blazevich revealed that he was one of the owners of a motorcycle dealership, L & M Motors, doing business as "Harley-Davidson, Lake Shore Yamaha" at two locations in Waukegan. The record reveals that he has been in the business of selling or repairing motorcycles for 23 to 24 years. He stated that he neither owned a Kawasaki franchise nor had ever had a KX 125 Kawasaki dirt bike licensed for public road use. He added that the manufacturers with which he dealt also made dirt bikes for mainly off-road use. He indicated that he was of the opinion that one could license the KX 125 Kawasaki dirt bike for public road use with some minor modifications such as adding a headlight, a taillight, turn signals, brake lights, a horn, a mirror and a license plate bracket. He added that if one

were to drive a "modified" KX 125 Kawasaki dirt bike on the public streets for any length or distance, it would be prudent to change the gear ratio and drive train.

On January 23, 1992, the trial court heard the arguments of both parties, reviewed the memoranda and applicable authorities, and granted defendant's motion for summary judgment. The court found that plaintiff was not entitled to any of the benefits, protection, or coverage for uninsured motorist benefits under State Farm policy No. 919 6037-B02-13. This appeal was timely filed.

Plaintiff contends that the KX 125 Kawasaki dirt bike can be licensed for public road use and that thus the vehicle is not excluded from coverage under the uninsured motor vehicle clause of the policy. Therefore, the plaintiff argues, the trial court erred in holding that plaintiff is not covered by State Farm insurance policy No. 919 6037-B02-13. Defendant maintains that there is no ambiguity in the phrase "able to be licensed for public road use." Defendant further asserts that, as plaintiff's expert admitted, even substantial modification in safety equipment will not make the KX 125 Kawasaki dirt bike able to be driven on *all* public roads, since it cannot be operated on a 55-mile-per-hour road without modifying the engine. Defendant contends that if we now expand the meaning of the clause in question to include a dirt bike which may be used only on certain roads, that clause will be meaningless because it will be so broad.

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34; *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 823.) Since it is a drastic means of disposing of litigation, summary judgment should be granted only when the " 'right of the moving party is clear and free from doubt.' " *Logan*, 139 Ill. 2d at 233, quoting *Purtill v. Hess* (1986), 111 Ill. 2d 223, 240; see also *Shull*, 223 Ill. App. 3d at 823.

■■ Before turning to the merits of this case, we will consider the appropriate standard of review. We note that in *Shull* the Appellate Court, Fourth District, addressed the misuse of the abuse of discretion standard in the summary judgment context in some opinions by all the districts of the Illinois Appellate Court. (*Shull*, 223 Ill. App. 3d at 823-24.) The Appellate Court, Second District, recognizes that inappropriate use of the abuse of discretion standard and follows the fourth district's analysis in *Shull*. The entry of summary judgment is

not a matter within the discretion of the trial court. (*Shull*, 223 Ill. App. 3d at 824.) When an appellate court is faced with an appeal dealing only with the propriety of a summary judgment, the *de novo* standard of review should be applied. (*Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 659-60.) The appellate court, like the trial court, determines whether there is a genuine issue of material fact and whether the movant should prevail as a matter of law. *Demos*, 209 Ill. App. 3d at 659-60.

■ An insurance policy is a contract and therefore is governed by contract law. (*Mammina v. Homeland Insurance Co.* (1939), 371 Ill. 555, 558; *Allstate Insurance Co. v. Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 789.) A trial court must determine initially, as a matter of law, whether the language of a purported contract is ambiguous as to the parties' intent. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288.) If no ambiguity exists in the writing, the parties' intent must be derived by the trial court, as a matter of law, exclusively from the writing itself. (*Quake*, 141 Ill. 2d at 288.) A clause is determined to be ambiguous if it is subject to more than one reasonable interpretation. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 74.) All doubts and ambiguities are to be resolved in favor of the insured. (*United States Fidelity*, 144 Ill. 2d at 74.) In order to construe an ambiguity against the insurer, an ambiguity in fact must exist and a court may not distort the contract to create the ambiguity itself. *Nationwide Insurance Co. v. Ervin* (1967), 87 Ill. App. 2d 432, 435, cited in *Allstate Insurance Co. v. Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 790, *appeal denied* (1987), 116 Ill. 2d 547.

In the present case, the record reveals that the trial court stated that it had considered the arguments of counsel, the memoranda, and applicable authorities. According to the record, the issue of the ambiguity or lack thereof of the uninsured motor vehicle exclusion was raised by both parties in the motion for summary judgment and the response to the motion for summary judgment. The trial court came to the conclusion that there were no genuine issues of material fact and that defendant was entitled to judgment in its favor as a matter of law. Although it did not discuss the issue of ambiguity, implicit in the trial court's judgment is the determination that the insurance contract was not ambiguous. We disagree.

■ The portion of the insurance policy that this court believes is ambiguous is the definition of an uninsured motor vehicle which excludes certain motor vehicles. In pertinent part, that section states:

"An uninsured motor vehicle does not include a land motor vehicle:

\* \* \*

2. designed for use mainly off public roads, *and not able to be licensed for public road use.* This does not apply while the vehicle is on public roads." (Emphasis added.)

There is no question that the KX 125 Kawasaki is a land motor vehicle designed mainly for use off public roads. That use was revealed in the certificate of origin of the vehicle and admitted by both parties. Yet we find the statement that the vehicle must "not [be] able to be licensed for public road use" ambiguous. This statement is subject to more than one interpretation. According to Webster's Third New International Dictionary 1304 (1986), the verb "license" has numerous senses: (1) "to grant or issue a license to" and (2) "to accord permission or consent to," among others. Consistent with the first sense of the word, to be "licensed" can be interpreted rather narrowly. That is, in the general context of motor vehicles, "licensed" can be reasonably interpreted to mean the obtaining of license or registration plates from the Secretary of State for purposes of operating such motor vehicle on a public roadway. Section 3—801(a) of the Illinois Vehicle Code (Code) requires, with minor exceptions, that *any vehicle* which shall be operated on the public highways of the State be subject to registration under the provisions of the Code. (Ill. Rev. Stat. 1989, ch. 95½, par. 3—801(a).) Upon registration, metal registration plates, also known as license plates, are distributed to vehicle owners. (Ill. Rev. Stat. 1989, ch. 95½, par. 3—412.) It is reasonable to conclude that a vehicle thus registered with the Secretary of State that has license plates mounted on it would satisfy the requirement of "able to be licensed for public road use." It is conceivable that the KX 125 Kawasaki dirt bike in question could have been licensable on this basis on June 11, 1989. It was a motor vehicle and thus came under section 3—801(a).

Another reasonable interpretation of the phrase "able to be licensed for public road use" is consistent with the second sense of the word "license" according to Webster's Dictionary. "[T]o accord permission or consent to" is a broader interpretation of the word "license." (Webster's Third New International Dictionary 1304 (1986).) That is, one could assume that the statement meant a broad permission by the State to drive the vehicle on public roads. To that end, a vehicle must not only be registered with the Secretary of State, but must satisfy certain equipment requirements in order to be permitted to be driven on public roads. (Ill. Rev. Stat. 1989, ch. 95½, par. 12—100 *et seq.*) For instance, under this sense, it would be necessary for

the KX 125 Kawasaki dirt bike to have a headlight, as well as other safety features. (Ill. Rev. Stat. 1989, ch. 95½, par. 12—201(a).) Under this interpretation of the policy wording, the KX 125 Kawasaki dirt bike driven by David Dolinar in its condition on June 11, 1989, would not have been "able to be licensed for public road use." Thus, this is a different interpretation of the policy.

We determine that the definition of an uninsured motor vehicle is subject to more than one reasonable interpretation and thus is ambiguous. Consequently, we are required to construe the exclusionary clause against the insurer and in favor of coverage for the plaintiff. (*United States Fidelity*, 144 Ill. 2d at 74.) The plaintiff maintains there is an issue of material fact as to what "able to be licensed for public road use" means, and defendant contends there is no issue of material fact with respect to this issue. We determine that we do not need to address this issue, as the phrase is ambiguous. Thus, we hold that the policy's uninsured motor vehicle exclusion does not preclude the coverage alleged in the declaratory judgment action. Plaintiff is determined to be covered by the uninsured motor vehicle clause in his parents' insurance policy No. 919 6037-B02-13. The order granting summary judgment for the defendant is reversed, and on this basis it is unnecessary to address plaintiff's second issue on appeal or defendant's other contentions.

The order of the circuit court of Lake County granting summary judgment is reversed.

Reversed.

UNVERZAGT, J., concurs.

PRESIDING JUSTICE INGLIS, dissenting:

I respectfully dissent. It is uncontested that the KX 125 Kawasaki dirt bike is "designed for use mainly off public roads." It is further uncontested that at the time of the accident the KX 125 dirt bike was not on a public road. Plaintiff argues, however, that the KX 125 Kawasaki dirt bike is licensable for public road use.

Summary judgment should be granted where no genuine issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Because the interpretation of insurance contracts is governed by the rules for interpreting contracts generally, whether a policy is ambiguous is a question of law for the court to decide. *Dash Messen-*

*ger Service, Inc. v. Hartford Insurance Co.* (1991), 221 Ill. App. 3d 1007, 1010.

All of the evidence in support of summary judgment leads to the conclusion that the dirt bike cannot be licensed for public road use within the meaning and intent of the policy. The testimony of plaintiff's expert, Frank Blazevich, does not create a material question of fact which precludes summary judgment. In his affidavit, Blazevich states that the KX 125 dirt bike was an off-road vehicle "which *can* be with minor modifications driven on public roads, but *cannot* be driven on highways." (Emphasis in original.) Blazevich agreed that "there are some roads even with the modification \*\*\* where the KX-125 could not be operated." He stated that only a vehicle with a minimum of 150 ccs could legally be driven on a highway. He then conceded that the term "highway" encompasses the term "road."

Furthermore, the manufacturer's statement of origin on this KX 125 Kawasaki dirt bike clearly states, "THIS VEHICLE WAS MANUFACTURED FOR OFF-THE-HIGHWAY USE ONLY IN SANCTIONED COMPETITION EVENTS UPON A CLOSED COURSE." In addition, there was a sticker on the fork and on top of the gas tank instructing that the KX 125 dirt bike was for off-road use only.

According to defendant's witness, the modifications necessary to legally drive the KX 125 dirt bike on a public road would require installation of headlights, turn signals, a turn signal lamp, brake lights, a horn, a license bracket for holding a vehicle license, a mirror, and foot pegs. David Dolinar testified that it would also be necessary to install a battery to furnish the essential power to operate the various lights and turn signals. In order to make the KX 125 Kawasaki dirt bike licensable, it would require "starting over from a pile of parts."

Plaintiff has convinced the majority that if the remote *possibility* existed that the KX 125 Kawasaki dirt bike could somehow, with extensive modifications, be built to be legally driven on a public road, then it is "able to be licensed for public road use." In essence, the majority has created an ambiguity in the policy language where none exists. I believe the trial judge was correct.

There is no ambiguity in the phrase "able to be licensed for public road use." In this case, there has been no evidence offered which raises a question of fact that the KX 125 Kawasaki dirt bike can be licensed to legally drive upon all public roads. Plaintiff's expert stated that even after substantial modification the KX 125 Kawasaki dirt bike is unable to be legally driven on all public roads.

The policy in question expressly does not include within the definitions a vehicle such as the KX 125 Kawasaki dirt bike unless it is ac-

766

tually being operated on a public road at the time of the occurrence giving rise to the claim. Clearly, it was not the intention to provide coverage for off-road riding of dirt bikes for the reason that the risk is clearly greater than the use of a motorcycle on the public roads.

Although plaintiff argues that the KX 125 Kawasaki dirt bike could somehow be modified for *limited* road usage, it had not been modified on the date of the accident. Moreover, Dolinar, the dirt bike's owner and the driver at the time of the accident, neither applied for a license nor intended to license the dirt bike. Dolinar was only 15 years old at the time of the accident and could not legally drive any vehicle upon the public roads. (See Ill. Rev. Stat. 1989, ch. 95½, pars. 6—103, 6—105.) Dolinar's KX 125 dirt bike could not be made licensable for use on the public roads by him on the date of the accident.

Accordingly, I dissent.